Johnie MARSHALL and Peggy
Marshall, Appellants,

v.

FORD MOTOR COMPANY, Appellee.

No. 05–93–00701–CV.

Court of Appeals of Texas,
Dallas.

May 9, 1994.

Harold F. Curtis, Jr., Greenville, for appellant.

Harold H. Wald, Dallas, for appellee.

Before KINKEADE, CHAPMAN and
BARBER, JJ.

## OPINION

KINKEADE, Justice.

Johnie Marshall and Peggy Marshall appeal a judgment entered in favor of Ford Motor Company in this suit on a personal guaranty in which the Marshalls guaranteed Jomar Parts Warehouse, Inc.'s ("Jomar") payments on account to Ford Marketing Corporation. In five points of error, the Marshalls contend that the trial court erred in entering judgment for Ford Motor Company because (1) there is no evidence or insufficient evidence to support the trial court's finding that Ford Marketing Corporation was merged into Ford Motor Company, (2) there is no evidence or insufficient evidence to support the trial court's sixth finding of fact that the Marshalls are liable to Ford Motor Company to the same extent as Jomar, and (3) absent the trial court's sixth finding of fact, there is no legal theory properly supported by the evidence to uphold the judgment against them. Because there is no evidence to support the trial court's sixth finding of fact and the remaining findings of fact and conclusions of law do not support a judgment against the Marshalls under the guaranty agreement, we reverse the trial court's judgment and render judgment for the Marshalls.

## FACTUAL AND PROCEDURAL HISTORY

In 1973, Johnie Marshall and Peggy Marshall signed an agreement with Ford Marketing Corporation guaranteeing payment for goods sold on open account by Ford Marketing Corporation to Jomar. The agreement stated that it was an "open and continuing guaranty" and that the Marshalls' obligations under the agreement were "concurrent with that of Jomar for sales made by Ford Marketing Corporation to Jomar...." The guaranty did not state that it would continue for the benefit of the successors or assigns of Ford Marketing Corporation. Testimony was introduced at trial, over the Marshalls' objection, that on December 31, 1974, Ford Marketing Corporation was merged into Ford Motor Company. On April 14, 1975, Ford Motor Company sent a letter to the Marshalls informing them of the merger and that Ford Motor Company should be substituted for Ford Marketing Corporation in their guaranty agreement. The Marshalls denied receiving the letter. There is no evidence that the original guaranty agreement was ever modified to reflect the merger. Jomar and Ford Motor Company continued conducting business on account through 1990 when Jomar's account became delinquent and Ford Motor Company demanded payment. Jomar and Ford Motor Company agreed that Jomar, in satisfaction of its outstanding account with Ford Motor Company, would execute a note for $77,893.37 with interest at ten percent. In return, Ford Motor Company agreed to accept $20,000 worth of returned auto parts from Jomar. Jomar made some of the payments due under the note but eventually defaulted.

Ford Motor Company sued Jomar on the note and the Marshalls on the guaranty with Ford Marketing Corporation. The trial court entered judgment against Jomar and the Marshalls. The trial court's sixth finding of fact stated, "Defendants Johnie Marshall and Peggy Marshall, guarantors, are liable to the same extent as Jomar Parts Warehouse, Inc., the original obligor."

## GUARANTY

In their third and fifth points of error, the Marshalls contend that there is no evidence or insufficient evidence to support the trial court's sixth finding of fact that they are liable to the same extent as Jomar, and that there is no legal theory supported by the remaining findings and conclusions upon which to uphold the judgment against them under the guaranty agreement. They argue that because the guaranty agreement secured payment only for sales between Jomar and *Ford Marketing Corporation* and the evidence showed that all sales sued upon were sales between Jomar and Ford Motor Company, they are not liable under the guaranty.

The Marshalls' argument raises both no evidence and factual insufficiency points of error. In deciding a "no evidence" point, we consider only the evidence and reasonable inferences from that evidence

which viewed in its most favorable light supports the trial court's finding and reject all evidence or reasonable inferences to the contrary. *See Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981); *Mercer v. Bludworth,* 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), *rev'd on other grounds, Shumway v. Horizon Credit Corp.,* 801 S.W.2d 890, 894 (Tex.1991). In deciding a "factual insufficiency" point, we review all the evidence, including any evidence contrary to the trial court's finding, and decide whether the trial court's judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pfeffer v. Southern Tex. Laborers' Pension Trust Fund,* 679 S.W.2d 691, 694 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Mercer,* 715 S.W.2d at 697.

When a party raises both no evidence and insufficient evidence points of error, we rule on the no evidence point first. *Glover,* 619 S.W.2d at 401; *Mercer,* 715 S.W.2d at 697. If there is more than a scintilla of probative evidence to support the trial court's finding, we overrule the no evidence point and affirm the judgment unless a factual insufficiency point was also raised and we sustain it on the basis of a full review of the evidence. *Mercer,* 715 S.W.2d at 697. We uphold the trial court's conclusions of law drawn from its findings of fact if we can sustain the judgment on any legal theory supported by the evidence. *See FDIC v. F & A Equip. Leasing,* 854 S.W.2d 681, 685 (Tex.App.—Dallas 1993, no writ).

Before reviewing the record in this case to determine if there is any evidence to support the trial court's sixth finding of fact, we review the legal requirements of guaranty contracts. To recover under the guaranty, Ford Motor Company must show proof of (1) the existence and ownership of the guaranty contract, (2) the terms of the underlying contract by the holder, (3) the occurrence of the conditions upon which liability is based, and (4) the failure or refusal to perform the promise by the guarantor. *Wiman v. Tomaszewicz,* 877 S.W.2d 1, 8 (Tex.App.—Dallas, 1994, n.w.h.); *Barclay v. Waxahachie Bank & Trust Co.,* 568 S.W.2d 721, 723 (Tex. Civ.App.—Waco 1978, no writ).

A guarantor may require that the terms of his guaranty be strictly followed. *FDIC v. Attayi,* 745 S.W.2d 939, 944 (Tex. App.—Houston [1st Dist.] 1988, no writ). The guaranty agreement may not be extended beyond its precise terms by construction or implication. *Id.* We determine the rights of the guarantors from the language of the contract. *Vastine v. Bank of Dallas,* 808 S.W.2d 463, 464 (Tex.1991); *Wiman,* slip op. at 8; *Attayi,* 745 S.W.2d at 944. Once the terms of a guaranty are ascertained, the guarantor is entitled to have his agreement strictly construed and it may not be extended by construction or implication beyond the precise terms of his contract. *McKnight v. Virginia Mirror Co.,* 463 S.W.2d 428, 430 (Tex.1971); *Southwest Sav. Ass'n v. Dunagan,* 392 S.W.2d 761, 766 (Tex.Civ.App.—Dallas 1965, writ ref'd n.r.e.).

Here, the guaranty agreement stated that the Marshalls' obligations under the agreement were "concurrent with that of Jomar Parts Warehouse, Inc. for sales made by *Ford Marketing Corporation* to Jomar...." The terms of the guaranty are unambiguous. The Marshalls specifically guaranteed Jomar's payment for sales made by *Ford Marketing Corporation.* Ford Motor Company argues that because of its merger with Ford Marketing Corporation, it became an assignee of all rights of Ford Marketing Corporation and can enforce the guaranty against the Marshalls. We need not address this argument because even assuming that Ford Motor Company can enforce the guaranty, it can enforce it only according to its precise terms. *See McKnight,* 463 S.W.2d at 430; *Dunagan,* 392 S.W.2d at 766. The precise terms here unconditionally guarantee payment for goods sold to Jomar by *Ford Marketing Corporation.* The only sales sued upon in this case were sales between Ford Motor Company and Jomar. The guaranty did not provide that the Marshalls obligated themselves to guarantee payments of goods sold by any successors of Ford Marketing Corporation. We have reviewed the evidence in this case and there is no evidence in the record that any of the sales that established Jomar's obligation were the result of sales from Ford

632

Marketing Corporation. There is, therefore, no evidence in the record to establish the trial court's sixth finding that the Marshalls are liable to the same extent as Jomar. Accordingly, we sustain the Marshalls' third point of error.

Having determined that there is no evidence to support the trial court's sixth finding of fact, we now determine if we can sustain the trial court's judgment against the Marshalls on any legal theory supported by the evidence. *See F & A Equip. Leasing,* 854 S.W.2d at 685. Because there is no evidence or findings of fact showing that the obligations sued upon involved sales between Ford Marketing Corporation and Jomar as required by the Marshalls' guaranty, the trial court's judgment against the Marshalls cannot be sustained on any legal theory. Ford Motor Company provided no evidence of the occurrence of the condition upon which liability under the guaranty is based, that is, sales from Ford Marketing Corporation. *See Wiman,* slip op. at 13–14; *Barclay,* 568 S.W.2d at 723. The Marshalls, therefore, are not liable to Ford Motor Company under the terms of this guaranty. *See Attayi,* 745 S.W.2d at 944. We sustain the Marshalls' fifth point of error.

We reverse the trial court's judgment and render judgment that Ford Motor Company take nothing on its causes of action against the Marshalls.