Affirmed and Memorandum Opinion filed August 18, 2011.

 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-10-00727-CV



 

ROBERTO MORALES, Appellant

V.

CEMEX CONSTRUCTION MATERIALS
SOUTH, LLC, Appellee

 



On Appeal from the 334th
District Court

Harris County, Texas

Trial Court Cause No. 2008-64322



 

MEMORANDUM OPINION

             Appellant,
Roberto Morales, appeals the portion of a judgment in favor of appellee, Cemex
Construction Materials South, LLC (“Cemex”), imposing personal liability on
Morales for a debt of B&M Ready Mix Concrete, LLC (“B&M”).  In five
issues, Morales contends the trial court erred by determining he was liable for
the debt under the Texas Trust Fund Act.  We affirm.

I.  Background

            At pertinent
times, Morales was 50% owner and president of B&M.  It is undisputed that B&M
failed to pay for $118,972.41 in materials it purchased on credit from Cemex. 
Cemex sued B&M as well as Morales, alleging he was personally liable for
the debt under several alternative theories.[1]

The
court conducted a bench trial.  Although they had answered the suit, neither
B&M nor Morales appeared for trial.  At the outset of trial, Cemex informed
the court that it was seeking to impose liability against Morales on two of the
theories alleged in its petition: (1) Morales’s personal guaranty of the debt;
and (2) the Texas Trust Fund Act.  After Cemex presented evidence, the trial
court orally announced that it found in favor of Cemex against both B&M and
Morales.

            On May 24,
2010, the trial court signed a final judgment awarding Cemex the following against
B&M and Morales jointly and severally: $118,972.41 for the principal debt;
$11,675.59 in pre-judgment interest; $36,263.05 in attorneys’ fees for trial; conditional
attorneys’ fees of $7,500 for each stage of an appeal; post-judgment interest;
and costs.  Morales filed a motion to modify or, alternatively, motion for new
trial, which the court denied by written order.  Only Morales now appeals the
judgment.

II.  Analysis

A.        Grounds for
the Judgment

            We must first
address a preliminary issue regarding the grounds on which judgment was
rendered.  The only theory of liability against Morales that he challenges on
appeal is the trust fund doctrine.  In five issues, he presents various reasons
the trial court allegedly erred by applying this doctrine.  Cemex contends that
we therefore must uphold the judgment because Morales does not challenge Cemex’s
other theory for imposing liability—the guaranty.[2]

In his
reply brief, Morales asserts that, in the judgment, the trial court unambiguously
limited the basis for recovery against Morales to the trust fund doctrine, and,
by submitting the proposed judgment which the court signed, Cemex waived
recovery against Morales under the guaranty.  Thus, Morales suggests he is
required on appeal to challenge only the court’s application of the trust fund
doctrine and we may not affirm based on the guaranty even if the evidence
supports recovery under this theory.  Alternatively, he contends the evidence
does not support recovery under this theory.  

No party
requested, and the trial court did not issue, findings of fact and conclusions
of law.  In the judgment, the trial court recited that “the following judgment should
be granted concerning the account for goods sold and delivered to [B&M] and
on the trust fund doctrine as against [Morales].”  We disagree that this
recitation unambiguously limited the ground for recovery against Morales to the
trust fund doctrine.  Rather, relative to the first part of the above-quoted language,
the entire suit, including the claims against Morales, “concern[ed] the account
for goods sold and delivered to [B&M]” because Cemex sought to hold Morales
liable for the account.  Therefore, the court’s recitation that “judgment
should be granted concerning the account” encompasses any theory of liability alleged
against Morales.  The court then added, in the conjunctive, “and on the trust
fund doctrine as against [Morales].”  Although the court essentially recited
that judgment against Morales was proper under the trust fund doctrine, it did not
explicitly exclude recovery against him under any other theory.

            At most, the
judgment is ambiguous regarding whether any other theory formed a basis for
Morales’s liability.  Therefore, we may consider the record and the context in
which the trial court rendered the judgment.  See Hatfield v. Solomon,
316 S.W.3d 50, 58 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing Lone
Star Cement Corp. v. J. Roll Fair, District Judge,
467 S.W.2d 402, 404–05 (Tex. 1971)); see also Gulf
Ins. Co. v. Burns Motors, Inc., 22 S.W.3d 417, 422
(Tex. 2000) (holding
that language of unambiguous judgment must be enforced without considering
extrinsic evidence regarding its meaning).

At
trial, Cemex clearly sought recovery under both the guaranty and trust fund
doctrine and never abandoned the guaranty theory during or after trial.  Significantly,
the parties’ interpretation of the basis for the judgment against Morales was
the subject of a post-judgment dispute.  In his motion to modify or,
alternatively, motion for new trial, Morales suggested judgment was rendered
against him based solely on the trust fund doctrine.  Cemex responded that the
judgment did not expressly limit recovery to this theory.  Nonetheless, Cemex also
filed a motion for judgment nunc pro tunc, asserting that omission of any specific
mention of the guaranty theory in the judgment was merely a clerical error.

The trial
court did not sign a judgment nunc pro tunc.  However, in its written order
denying Morales’s motion to modify or, alternatively, motion for new trial, the
court stated, “and after argument, the Court announced that it was denying
Defendant’s Motion and no recital in the Final Judgment was intended to limit
the grounds of Plaintiff’s judgment to the trust fund doctrine.”  Thus, the
court’s own clarification of its judgment demonstrates recovery against Morales
was not limited to the trust fund doctrine.  Morales posits that we may give no
effect to the court’s statement because it did not amend the judgment. 
However, this position is contrary to the above-cited principle that we may
consider the entire record if the judgment is ambiguous.  See Hatfield,
316 S.W.3d at 58.

            Because the
judgment is arguably ambiguous and clarification through an order denying a
motion for new trial was somewhat unusual, we will evaluate whether the
evidence supported recovery under the guaranty rather than simply affirming based
on Morales’s failure to challenge this ground in his original brief. 

B.        The Guaranty

            To recover
under a guaranty, the plaintiff must establish (1) existence and ownership of
the guaranty agreement, (2) the terms of the underlying contract by the holder,
(3) occurrence of the conditions upon which liability is based, and (4) failure
or refusal to perform the promise by the guarantor.  Marshall
v. Ford Motor Co., 878 S.W.2d 629, 631 (Tex. App.—Dallas
1994, no writ).

Relative
to the second, third, and fourth elements, Morales does not dispute that
neither he nor B&M paid for the materials at issue purchased on credit from
Cemex.  With respect to the first element, Cemex presented at trial a “CREDIT
APPLICATION AND AGREEMENT” submitted by B&M for its potential purchases
from Cemex.  The first page of the document containing the applicant’s
information was signed only by Francisco Bunt, CEO of B&M, although Morales
was listed thereon as president.  

Cemex
also presented a document entitled “Continuing Guaranty,” which, according to
its regional director of credit, was submitted with the credit application. 
The guaranty provided in pertinent part:

In
consideration of CEMEX . . . , at my request giving or extending terms of
credit to ________ hereinafter called debtor, I hereby give this Continuing
Guaranty and unconditionally and irrevocably guarantee to CEMEX, its
transferees, successors and assigns, for the payment and performance in full of
any obligations and indebtedness, direct or contingent, of debtor to CEMEX,
plus all interest, attorneys’ fees, costs of court and charges of whatsoever
nature and kind, whether due or to become due and whether now existing or
hereafter arising.  It is expressly understood that this guaranty covers any
debt that may now be existing, or any renewals thereof, as well as any other or
further indebtedness that may be made, and renewals thereof, during the life of
this guaranty; and I hereby bind and obligate myself, heirs, successors and
assigns, with debtor, jointly and severally for the payment of such
indebtedness precisely as if the same had been contracted and was due or owing
by me personally, hereby agreeing to, and binding myself, my heirs, successors
and assigns, by all the terms and conditions contained in the credit agreement
and all other documents incorporated therein by reference and any note or notes,
signed or to be signed by the debtor, making me a party thereto; . . .  I agree
to pay upon demand at any time to CEMEX, its transferees, successors or assigns
the full amount of debtor’s indebtedness plus interest, attorneys’ fees, costs
of court and charges, as set forth above. . . 

As
Morales notes, the blank space for identification of “debtor” was left blank on
this guaranty, and “debtor” was not otherwise identified therein.  However, the
guaranty was executed in conjunction with B&M’s credit application, and the
guaranty reflects its purpose was to secure credit for the “debtor.” 
Consequently, the trial court could have reasonably concluded that the “debtor”
referenced in the guaranty was B&M.

Cemex
presented testimony from Bunt acknowledging that he signed the guaranty in one
of the spaces provided for signature of each “Guarantor.”  The guaranty
apparently also contains the signatures of Morales, his spouse, and Bunt’s
spouse.  Morales contends the evidence is insufficient to establish that he
indeed signed the guaranty.  However, Bunt testified that he asked Morales if
he signed the guaranty, and Morales replied, “the documents are complete and in
your desk.”  Bunt did not recall whether Morales specifically stated he
“signed” the guaranty, but Bunt indicated he understood “complete” to mean that
Morales signed it.  Additionally, because the only matter to be completed by B&M’s
representatives relative to the document was supplying their signatures, the
trial court could have reasonably inferred that “complete” meant Morales signed
the guaranty.

Moreover,
the guaranty form included the following notation: “Principal corporate owners,
all partners, or individual owners, AND, if applicable, their spouses must sign
the Continuing Guaranty as a condition of the approval of credit.”  Cemex presented
deposition testimony from Morales admitting that he and Bunt were each 50%
owners of B&M.  Thus, this notation combined with Morales’s admission of an
ownership interest supported the trial court’s implicit finding that he signed
the guaranty.

In sum, Cemex
proved existence and ownership of a guaranty enforceable against Morales. 
Accordingly, the trial court did not err by determining Morales was liable for
B&M’s debt based on his personal guaranty thereof.

We
affirm the trial court’s judgment.

 

                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

Panel consists of Chief Justice
Hedges and Justices Seymore and Boyce.









[1]
Cemex also sued several other “officers, directors, and principals” of
B&M.  However, these claims were either non-suited or dismissed with
prejudice.





[2]
Cemex also asserts that Morales must satisfy the Craddock test for
setting aside a default judgment but presents no argument regarding Craddock. 
Morales responds that, in a post-answer default situation, the plaintiff must
still prove its case at trial; thus, he may challenge the judgment on the
merits without satisfying Craddock.  We need not resolve this dispute
because, even if Morales may challenge the judgment without satisfying Craddock,
we nonetheless uphold the judgment on its merits.