**Affirmed and Opinion filed July 24, 2012.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-11-00736-CV

---

### JONATHAN WASSERBERG AND JASON FELT, Appellants

### V.

### FLOORING SERVICES OF TEXAS, LLC AND STEWART TITLE GUARANTY CO., Appellees

---

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2008-09879**

---

## O P I N I O N

Appellee Flooring Services of Texas, LLC ("FST") provided goods and services for homes built and sold by Waterhill Companies Limited ("WCL")[1] in 2007. When WCL failed to make payments for such goods and services, FST sued WCL for breach of contract. FST also sued appellants Jonathan Wasserberg and Jason Felt, alleging that Wasserberg and Felt had personally guaranteed any debt owed by WCL to FST. FST added the homebuyers of the homes as defendants, seeking to foreclose on materialmen

---

[1] WCL is not a party to this appeal.

and mechanic's liens it claimed on the homes. Appellee Stewart Title Guaranty Co., the underwriter of title insurance policies that had been issued to the homebuyers who purchased the homes, intervened in the suit to recover amounts it paid on behalf of the homebuyers to settle the liens.

After a bench trial, the trial court rendered judgment in favor of FST and Stewart Title against WCL, Wasserberg, and Felt. Wasserberg and Felt appeal, and we affirm.

### BACKGROUND

In 2002, Wasserberg and Felt signed a credit application on behalf of "Waterhill Company, LLC," in which Wasserberg and Felt purported to "personally guarantee all indebtedness hereunder" in their individual capacities to obtain a line of credit with "Flooring Services of Texas, LP." Flooring Services of Texas, LP extended credit to Waterhill Company, LLC and continued to provide goods and services from that point forward, including after (1) Waterhill Company, LLC converted into WCL on November 11, 2003, and (2) Flooring Services of Texas, LP merged into FST on June 27, 2007.[2]

In late 2007, Wasserberg signed multiple "all bills paid" affidavits swearing that, with some exceptions, there were "no unpaid labor or material claims" against certain homes that WCL then sold to various homebuyers. The affidavits did not indicate that WCL had not paid numerous outstanding invoices for goods and services provided by FST with respect to the homes.

After FST unsuccessfully attempted to obtain payment from WCL on its delinquent account, FST sued WCL to recover the unpaid amounts. FST also sued Wasserberg and Felt based on their personal guaranties in the 2002 credit application. Additionally, FST filed notices of materialmen and mechanic's liens against a number of the homes that were sold, then added the homebuyers as defendants in the lawsuit to seek foreclosure of the liens.

---

[2] Wasserberg and Felt are limited partners of WCL as well as the president and manager, respectively, of the two companies that serve as the general partners of WCL.

Stewart Title, the underwriter of the title insurance policies that had been issued to the homebuyers, settled the claims related to the liens on behalf of the homebuyers, then intervened in FST's lawsuit to seek indemnity from WCL and Wasserberg for the settlement amounts. Stewart Title argued that, under Texas Property Code section 53.085(e), the "all bills paid" affidavits signed by Wasserberg rendered him personally liable for any damages resulting from the false or incorrect information in the affidavits.[3]

WCL never disputed that it owed a debt to FST for goods and services provided, but claimed that WCL was entitled to an offset because of FST's alleged shoddy workmanship in some of the homes. Wasserberg and Felt argued at trial that they were not personally liable for WCL's debt based on the personal guaranties in the 2002 credit application because the guaranties only applied to debt incurred by Waterhill Company, LLC for goods and services provided by Flooring Services of Texas, LP—not debts incurred for goods and services provided after the two companies became WCL and FST.

With respect to Stewart Title's claims that Wasserberg could be held personally liable for any damages resulting from false or incorrect information in the "all bills paid" affidavits, Wasserberg asserted at trial that the "all bills paid" affidavits were "not the document[s] that [he] signed." The trial court construed this argument as an un-pleaded affirmative defense for which no evidence could be presented, and denied Wasserberg's motion for leave to file a trial amendment regarding that defense.

After a bench trial, the trial court signed a final judgment (1) awarding FST $81,010.40 in damages and $76,347.25 in attorney's fees against WCL, Wasserberg, and Felt, and (2) awarding Stewart Title $144,453.48 against WCL and Wasserberg.

Wasserberg and Felt both appeal, arguing that they cannot be held liable as a matter of law for WCL's debt based on the personal guaranties in the 2002 credit application. Wasserberg also argues that the trial court erroneously prevented him from

---

[3] Section 53.085(e) states: "A person signing an affidavit under this section is personally liable for any loss or damage resulting from any false or incorrect information in the affidavit." TEX. PROP. CODE ANN. § 53.085(e) (West 2003 & Supp. 2011).

proffering evidence showing that he is not personally liable for damages resulting from any false or incorrect information in the "all bills paid" affidavits.

ANALYSIS

## I.     Personal Guaranties

Wasserberg and Felt argue in their first issue that the trial court improperly applied the personal guaranties in the 2002 credit application to debts incurred by WCL for goods and services provided by FST because "neither the party seeking to enforce the guarant[ies] nor the party whose performance was guaranteed is named by the existing document."

A guaranty agreement creates a secondary obligation whereby the guarantor promises to be responsible for the debt of another and may be called upon to perform if the primary obligor fails to perform. *Tenneco Oil Co. v. Gulsby Eng'g, Inc.*, 846 S.W.2d 599, 605 (Tex. App.—Houston [14th Dist.] 1993, writ denied). To recover under a guaranty contract, a party must show proof of (1) the existence and ownership of the guaranty contract; (2) the terms of the underlying contract by the holder; (3) the occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform the promise by the guarantor. *Lee v. Martin Marietta Materials Sw., Ltd.*, 141 S.W.3d 719, 720–21 (Tex. App.—San Antonio 2004, no pet.) (citing *Marshall v. Ford Motor Co.*, 878 S.W.2d 629, 631 (Tex. App.—Dallas 1994, no writ)).

According to the rule of *strictissimi juris*, a guarantor may require that the terms of his guaranty be strictly followed, and that the agreement not be extended beyond its precise terms by construction or implication. *McKnight v. Va. Mirror Co.*, 463 S.W.2d 428, 430 (Tex. 1971); *FDIC v Attayi*, 745 S.W.2d 939, 943–44 (Tex. App.—Houston [1st Dist.] 1988, no writ.). Before we can apply the rule of *strictissimi juris*, however, we must examine the terms of the guaranty based on the language of the contract. *See Attayi*, 745 S.W.2d at 943–44. The interpretation of the guaranty is a question of law we review de novo. *See Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000).

4

Wasserberg and Felt's guaranties state, in relevant part:

> In consideration of credit being extended to the above named firm, I personally guarantee all indebtedness hereunder. I further agree that this guarant[y] is an absolute, completed, and continuing one, and no notice of the indebtedness or an extension of credit already or hereinafter contracted by or extended need be given. The terms may be rearranged, extended and/or renewed without notice to me.

Wasserberg and Felt argue that the trial court violated the rule of *strictissimi juris* by interpreting the guaranties in a manner that (1) extends them to debts incurred by WCL; and (2) renders them enforceable by FST. We address these arguments separately.

## A.    Applicability to Debts Incurred by WCL

Wasserberg and Felt argue that "the alleged guaranty is quite plainly restricted to indebtedness incurred on behalf of Waterhill Company, LLC"—not WCL—because the personal guaranty was made "[i]n consideration of credit being extended to the above named firm," which is Waterhill Company, LLC. Wasserberg and Felt assert that the guaranty only extends to indebtedness for goods or services that were provided before Waterhill Company, LLC converted to WCL because after that point, the only company mentioned in the guaranty "no longer exist[ed]."

However, Waterhill Company, LLC did not cease to exist upon conversion under Texas law. According to its Articles of Conversion admitted at trial, Waterhill Company, LLC converted to WCL pursuant to Texas Revised Limited Partnership Act section 2.15 and Texas Business Corporation Act article 5.17. The Articles of Conversion state further that "[t]he approval of the plan of conversion was duly authorized by all action required by the laws under which Waterhill Company, L.L.C. is incorporated and by its constituent documents."

Texas Revised Limited Partnership Act section 2.15(g)(1) states: "When a conversion of a converting entity takes effect . . . the converting entity shall continue to exist, without interruption, but in the organizational form of the converted entity rather than in its prior organizational form." Act of May 28, 1997, 75th Leg., R.S., ch. 375, §

5

95, 1997 Tex. Gen. Laws 1516, 1586 (expired Jan. 1, 2010) (formerly TEX. REV. CIV. STAT. ANN. art. 6132a-1 § 2.15(g)(1)) (current version at TEX. BUS. ORG. CODE ANN. § 10.106 (West 2011) (eff. Jan. 1, 2006)). Additionally, Texas Business Corporation Act article 5.17 requires a plan of conversion to include "a statement that the converting entity is continuing in existence in the organizational form of the converted entity." Act of May 28, 1997, 75th Leg., R.S., ch. 375, § 32, 1997 Tex. Gen. Laws 1516, 1547 (expired Jan. 1, 2010) (formerly TEX. BUS. CORP. ACT ANN. art. 5.17 § C) (current version at TEX. BUS. ORG. CODE ANN. § 10.103 (West 2011) (eff. Jan. 1, 2006)). Contrary to Wasserberg and Felt's contention that there "is no evidence that the debt at issue was incurred on behalf of Waterhill Company L.L.C.," the Articles of Conversion and Texas law constitute proof that Waterhill Company, LLC continued to exist in the organizational form of WCL when the goods and services at issue were provided. *See Lee*, 141 S.W.3d at 721 ("Even with the rule of *strictissimi juris*, however, if Redland and Martin are the same company, Lee cannot escape liability [as guarantor of debt owed to Redland] simply because the company changed its name or its organizational form." (citing *SEI Bus. Sys., Inc. v. Bank One Tex., N.A.*, 803 S.W.2d 838, 840 (Tex. App.— Dallas 1991 no writ))). The trial court properly concluded that the guaranties were applicable to debts incurred after Waterhill Company, LLC converted to WCL.

## B. Enforceability by FST

Wasserberg and Felt also argue that FST cannot enforce the guaranties with respect to goods and services rendered after Flooring Services of Texas, LP merged into FST because "[n]owhere in the document" is FST named, "nor is there language in the alleged guaranty" continuing it to Flooring Services of Texas, LP's "successors or assigns."[4] In support of their argument that FST cannot enforce the guaranties unless

---

[4] Wasserberg and Felt also argue without further explanation that FST presented "no evidence that it is the owner of the guaranty contract at issue." To the extent that this argument is separate from the ones stated above, we conclude that it is without merit. FST proffered evidence that Flooring Services of Texas, LP's merger into FST was executed pursuant to statutes stating that all rights of the parties to the merger shall be allocated to and vested in the surviving entity without the need for any formal transfer or assignment. *See, e.g.*, TEX. BUS. ORG. CODE ANN. 10.008(a)(2) (West 2011).

such requirements are met, Wasserberg and Felt cite *Marshall v. Ford Motor Co.*, 878 S.W.2d 629, 630 (Tex. App.—Dallas 1994, no writ), and *Peters v. Gifford-Hill & Co., Inc.*, 794 S.W.2d 856, 863 (Tex. App.—Dallas 1994, writ denied). Neither of these cases are binding on this court. Nonetheless, we find both cases distinguishable.

*Marshall* concerned an agreement expressly guaranteeing payment for goods sold on an open account by "Ford Marketing Corporation." *Marshall*, 878 S.W.2d at 630. The guaranty "did not state that it would continue for the benefit of the successors or assigns of Ford Marketing Corporation." *Id*. The *Marshall* court held that the guaranty did not extend to goods sold on open account by a post-merger successor corporation, Ford Motor Company. *Id*. at 631. The obstacle to enforceability in *Marshall*, however, was not simply that the name Ford Marketing Corporation was used instead of the name Ford Motor Company in the guaranty, but that the guaranty was expressly intended to cover only sales made by Ford Marketing Company. *See id*. ("Ford Motor company argues that because of its merger with Ford Marketing Corporation, it became an assignee of all rights of Ford Marketing Corporation and can enforce the guaranty against the Marshalls. *We need not address this argument* because even assuming that Ford Motor Company can enforce the guaranty, it can enforce it only according to its precise terms," which "unconditionally guaranty payment for goods" sold by Ford Marketing Corporation. (emphasis added)).

Unlike the guaranty at issue in *Marshall*, the guaranties here state that Wasserberg and Felt personally guarantee "all indebtedness hereunder" in "consideration of credit being extended to [Waterhill Company, L.L.C.]." Because the guaranties are not limited to goods and services provided by Flooring Services of Texas, LLP, *Marshall* does not support Wasserberg and Felt's argument. And, although Wasserberg and Felt argue that the guaranties fail here "because there is no evidence of any further consideration" being extended by FST in exchange for a continuing guarantee by Wasserberg or Felt, the guaranties provide that "this guarant[y] is an absolute, completed, and continuing one, and no notice of the indebtedness or an extension of credit already or hereafter contracted

7

by or extended need be given."

Wasserberg and Felt also rely on *Gifford-Hill* to argue that FST cannot enforce the guaranties because when an entity "seeks to extend a guaranty to actions by a successor entity, Texas courts have required language to that effect." However, *Gifford-Hill* creates no such requirement. The guaranty at issue in *Gifford-Hill* contained a provision stating that "[s]hould the status of the Debtor change, this guaranty shall continue and also cover the indebtedness of the Debtor under the new status, according to the terms hereof guaranteeing the indebtedness of the original Debtor," as well as a provision stating that if the debtor became incorporated, "such fact shall in no manner affect [the guarantor's] liability hereunder." *Gifford-Hill*, 794 S.W.2d at 857, 860. Although the court found such language sufficient to defeat the guarantor's argument that he was not liable for payments owed by the debtor's corporate successor, the court never held that such language is necessary to do so. *See id*. at 860. Wasserberg and Felt provide no other argument on appeal for why we should require such language here.[5]

We overrule Wasserberg and Felt's first issue.

## II.    "All Bills Paid" Affidavits

Wasserberg argues in his second issue that the trial court's ruling prohibiting evidence on any un-pleaded affirmative defenses improperly prevented Wasserberg "from denying he had filled out" the "all bills paid" affidavits. Wasserberg admits that he signed the affidavits, which include a statement that "there are now no unpaid labor or material claims against the improvements or the property." However, he claims he was prevented from arguing that "some other person or entity was responsible" for listing

---

[5] To the extent that Wasserberg and Felt also rely on these cases to argue that the guaranty cannot apply to debts owed by WCL, such reliance is misplaced. First, *Marshall* concerns a corporate successor's ability to benefit from an agreement guaranteeing payment for any goods and services provided by the successor's pre-merger entity. *Marshall*, 878 S.W.2d at 630. It does not concern the applicability of a guaranty to debts acquired after the debtor named in the guaranty converts but continues to exist in a new organizational form as a matter of law. Second, as we explain above, *Gifford-Hill* holds that language in the guaranty extending its applicability to payments owed by the debtor's successor entity is sufficient to render it applicable in that regard; it does not hold that such language is necessary. *Gifford-Hill*, 794 S.W.2d at 860.

8

exceptions to this statement for amounts owed to certain vendors without also listing the amounts owed to FST. Wasserberg argues that because this argument is not an affirmative defense, his general denial "was sufficient to put the existence of any misrepresentation . . . at issue, including any showing that some other person or entity was responsible."

Regardless of whether the trial court properly ruled that Wasserberg's argument constituted an un-pleaded affirmative defense for which no evidence was permitted, Wasserberg was allowed to testify that when he signed the affidavits, the document did not contain any information regarding outstanding amounts owed for labor and materials to FST or any other vendor. The trial court expressly acknowledged that Wasserberg ultimately testified to this effect:

> THE COURT: . . . . So to the extent that he wants to say I didn't fill this in then it's just pure recklessness which would get him under fraud anyway.
> So I think you managed to get around my ruling quite nicely. Very adeptly to get the testimony in here that you want to get in, but I'm also telling you that it's not making any legal impact on my thinking of how this case should proceed or how this case should be decided.

Wasserberg fails to specify on appeal what additional testimony he was prevented from giving.[6] We therefore reject Wasserberg's contention that the trial court "prevented him from contesting his personal liability" pursuant to this argument, and we overrule Wasserberg's second issue.

---

[6] Wasserberg requested and was granted an opportunity to make an offer of proof regarding any excluded testimony, but such an offer was never made. However, Wasserberg's trial counsel agreed that the trial court correctly understood that "what [Wasserberg] really wants to say is somebody filled in all these blanks [for exceptions to the "no unpaid labor or material" statement] after the fact." Wasserberg does not challenge the trial court's findings of fact that (1) when Wasserberg signed the affidavits swearing that there were no debts against the properties, he had prior notice that FST's account had been delinquent, (2) Wasserberg's execution of the affidavits was reckless to such a degree as to be fraudulent, and (3) Stewart Title was entitled to recover from Wasserberg for fraud in signing the affidavits.

9

## CONCLUSION

Having overruled both Wasserberg's and Felt's issues on appeal, we affirm the judgment of the trial court.


/s/        Sharon McCally
                Justice

Panel consists of Justices Frost, McCally, and Mirabal.[7]

---

[7] Senior Justice Margaret Garner Mirabal sitting by assignment.