

# NUMBER 13-10-00602-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

BASS DRUM INVESTMENTS, INC.,                              Appellant,

v.

FIRST NATIONAL BANK,                              Appellee.

# NUMBER 13-10-00603-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

SUSANA AGUILAR,                              Appellant,

v.

FIRST NATIONAL BANK,                              Appellee.

**On appeal from the 206th District Court
of Hidalgo County, Texas.**

# MEMORANDUM OPINION
### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Benavides

This is a suit to collect on a loan deficiency and overdrawn bank account. Appellants Bass Drum Investment, Inc. ("Bass Drum") and Susana Aguilar bring five issues on appeal, asserting the trial court erred in granting summary judgment because a genuine issue of material fact existed with regard to: (1) the alleged loan deficiency; (2) appellee First National Bank's compliance with statutory notice requirements on post-foreclosure property; and (3) the amounts owed and Aguilar's liability for those amounts. Bass Drum and Aguilar further contend that the trial court erred (4) in considering an untimely filed "letter brief" and (5) in awarding contingent attorney's fees. We affirm.

## I. BACKGROUND

On July 24, 2007, Bass Drum took out a $235,700 loan from First National Bank. The terms and conditions of the loan were set forth in a promissory note (the "Note") signed by Aguilar, Bass Drum's president. Aguilar executed the Note in her official capacity, but signed a written guaranty of the loan in her personal capacity (the "Guaranty") as well. Bass Drum also opened a business checking account at First National Bank.

Bass Drum's loan was secured by a deed of trust for a property located in Hidalgo County. The loan was scheduled to mature on July 22, 2008. Bass Drum eventually defaulted on the Note, and Aguilar defaulted on the Guaranty by failing to pay the debt on the Note. In response, First National Bank accelerated the Note pursuant to its terms and to the terms of the deed of trust, which allowed the bank to accelerate the unpaid principal balance and interest without notice because both Bass Drum and Aguilar waived their rights of notice.

First National Bank executed a substitute trustee's deed on the property and foreclosed on the lot. At a post-foreclosure sale, the property was acquired for $235,700, exactly the principal amount of the note. However, a deficiency totaling $65,976.23 remained, which consisted of accrued unpaid interest, late fees, and attorney's fees in attempting to collect the debt. At or around this same time frame, Bass Drum allegedly breached the terms of its business checking account by overdrawing $4,854.13 from the account.

After the foreclosure, First National Bank made a formal demand for payment to Bass Drum and Aguilar for the deficiency and the overdrawn bank monies. When appellees did not respond to the demand, First National Bank filed suit against Bass Drum and Aguilar for breaching the Note, the Guaranty, and the terms of the checking account. First National Bank filed traditional motions for summary judgment for the breach of the Note and the Guaranty, and attached several exhibits, including copies of the Note, the Guaranty, the deed of trust, the substitute trustee's deed, demand letters to both Bass Drum and Aguilar, the checking account agreement, and affidavits from Gloria

3

Rios, a bank employee, and Jefferson Crabb and Carlos Yzaguirre, First National Bank's attorneys. Bass Drum and Aguilar responded to the motion. First National Bank then filed a "letter brief" reply to Bass Drum and Aguilar's responses, without moving for leave to do so. The trial court granted the bank's motion and its requested relief, including a judgment for the deficiency of $65,976.23, the overdrawn checking account funds of $4,854.13, $6,553.07 as interest on the principal amount to the date of judgment, attorney's fees of $2,200 at the trial court level, contingent attorney's fees of $15,000 if the case was appealed to the court of appeals and another $15,000 if the case was appealed to the supreme court, and $368 for court costs.

This appeal ensued.

## II. SUMMARY JUDGMENT

### A. Standard of Review and Applicable Law

"In a summary judgment motion brought under Texas Rule of Civil Procedure 166a(c), the moving party has the burden of showing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law." *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005); *see* TEX. R. CIV. P. 166a(c). In deciding whether there is a disputed material fact, evidence favorable to the nonmovant is accepted as true, and every reasonable inference or doubt must be indulged in favor of the nonmovant. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985)).

The standard of review on a motion for summary judgment is de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). On appeal, evidence that

4

favors the movant will not be considered "unless it is uncontroverted." *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply C*o., 391 S.W.2d 41, 47 (Tex. 1975).

Here, to establish that Bass Drum breached the Note, First National Bank had to prove: (1) the existence of the note in question; (2) that Bass Drum signed the note; (3) that the bank was the legal owner and holder of the note; and (4) the balance certain on the note. *See Rea v. Sunbelt Sav. F.S.B.*, 822 S.W.2d 370, 372 (Tex. App—Dallas 1991, no writ); *see also Albright v. Regions Bank*, No. 13-08-262-CV, 2009 Tex. App. LEXIS 8308, at *6 (Tex. App.—Corpus Christi Oct. 29, 2009, no pet.) (mem. op.). To prove that Aguilar breached the Guaranty, First National Bank had to establish the following: (1) the existence and ownership of the guaranty contract; (2) the terms of the underlying promissory note; (3) Bass Drum's default on the note; and (4) the failure or refusal to perform the promise by the guarantor. *Marshall v. Ford Motor Co.*, 878 S.W.2d 629, 631 (Tex. App.—Dallas 1994, no writ); *see also Albright,* 2009 Tex. App. LEXIS 8308, at *6.

**B.  Discussion**

**1. The Alleged Deficiency**

In their first issue, Bass Drum and Aguilar allege that the trial court erred in granting First National Bank's motion for summary judgment because a genuine issue of material fact existed with respect to the alleged deficiency. They argue that the principal amount of the loan was $235,700, and because the property was sold at a post-default foreclosure sale for the same amount—$235,700—no deficiency existed. We are unconvinced by this argument.

5

For a deficiency to exist, the price at which the real property is sold at a foreclosure sale must be less than the unpaid balance of the indebtedness secured by the real property. *See* TEX. PROP. CODE ANN. § 51.003(a) (West 2007). Further, Texas Property Code section 51.003(c) provides that, "If no party requests the determination of fair market value or is such request is made and no competent evidence of fair market value is introduced, the sale price at the foreclosure sale shall be used to compute the deficiency." *Id.* § 51.003(c).

Bass Drum is correct to note that the principal amount and the foreclosure sale price were the same. However, per the terms of the loan, First National Bank had the right to "declare the unpaid principal balance, earned interest, and any other amounts owed on the note immediately due" upon default. This amount also included attorney's fees, as Bass Drum agreed to "pay reasonable attorney's fees and court and other costs if this note is placed in the hands of an attorney to collect or enforce the note."

It is undisputed that Bass Drum and Aguilar defaulted on the Note and Guaranty, respectively. The affidavit of Gloria Rios, a First National Bank employee, established the additional costs associated with collecting the defaulted loan. Rios's affidavit sets forth that "after the foreclosure sale, a deficiency balance remained in the amount of $65,876.23." Rios's affidavit also states that "interest on the deficiency continues to accrue . . . at 18% [per annum], or $32.93 per day" and that the bank had to "retain both [attorney] Jefferson Crabb and [attorney] Carlos M. Yzaguirre in connection with the collection of the debt at issue in this lawsuit."

Neither Bass Drum nor Aguilar controverted Rios's affidavit. Aguilar did submit

6

an affidavit in her response to the motion for summary judgment, but the affidavit did not address any of Rios's claims regarding the loan's interest, associated costs with collection, or attorney's fees. Aguilar's affidavit instead argued that no deficiency should be found because: (1) the foreclosure sale was for the same amount of money as the initial loan and (2) First National Bank eventually sold the property at issue to a third-party buyer for a profit.[1] We, however, find these facts irrelevant. The property code states that the deficiency should be calculated at the time of the foreclosure sale if neither party requested a determination of fair market value. *Id.* § 51.003(a), (c). There is no evidence in the record that either party made such a request. Instead, the only evidence we have to consider is Rios's uncontroverted affidavit which established that, at the time of the foreclosure sale, the amount of indebtedness was $65,876.23, excluding attorney's fees. *See Great Am. Reserve Ins. Co.*, 391 S.W.2d at 47. The Hidalgo County tax appraisal documents, which Bass Drum and Aguilar submitted as evidence in their response to the summary judgment motion, are also irrelevant. As noted, fair market value is not at issue in this case because no one requested an appraisal.

We overrule this issue.

### 2. First National Bank's Compliance with Notice Requirements

Bass Drum and Aguilar further complain that the trial court erred because it granted summary judgment when First National Bank failed to provide evidence that it

---

[1] First National Bank later sold the property to a third party for $250,000.

complied with the statutory notice requirements for post-foreclosure property. Texas Property Code section 51.002(b)(3) provides that the bank should serve "written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt." TEX. PROP. CODE ANN. § 51.002(b)(3) (West 2007).

Both Bass Drum and Aguilar, however, waived their rights to notice. The Note executed by Bass Drum's president, Aguilar, stipulated that:

> If Borrower defaults in the payment of this note or in the performance of any obligation in any instrument securing or collateral to this note, Lender may declare the unpaid principal balance, earned interest, and any other amounts owed on the note immediately due. Borrower and each surety, endorser, and guarantor waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

The deed of trust for the property contained a similar waiver:

> 21. Grantor and each surety, endorser, and guarantor of the Note waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, protest, and notice of protest, to the extent permitted by law.

Finally, the Guaranty Aguilar signed in her personal capacity also included a similar waiver clause:

> Guarantor waives . . . (b) all rights of Guarantor under chapter 34 of the Texas Business and Commerce Code and rule 31 of the Texas Rules of Civil Procedure; (c) protest; (d) notice of extensions, increases, renewals, or rearrangements of the Guaranteed indebtedness; and (e) notice of acceptance of this guaranty, of creation of the Guaranteed Indebtedness, of failure to pay the Guaranteed Indebtedness as it matures, of any other default, of adverse change in Borrower's financial condition, of release or substitution of collateral, of intent to accelerate, of acceleration, of subordination to Lender's rights in any collateral, and every other notice of every kind.

8

Because Bass Drum and Aguilar waived their rights to notice, there was no genuine issue of material fact regarding First National Bank's compliance with the statutory requirements for notice on post-foreclosure sales of property. "A debtor may expressly waive his right to notice of an intent to accelerate." *See Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 892–93 (Tex. 1991).

In any event, there is evidence that Bass Drum and Aguilar received notice of the post-foreclosure sale. The record shows that both parties received a demand letter from attorney Carlos Yzaguirre that they had breached the Note and Guaranty, respectively. Further, the affidavit of Jefferson Crabb provided that he "either personally or by agent gave proper notice of the sale to every debtor required by statute, in strict compliance with the provisions of the deed of trust and the requirements of Section 51.002 of the Texas Property Code." Importantly, Bass Drum and Aguilar do not assert that they did not receive notice; they only assert that the bank failed to prove that it gave notice. In light of the demand letters and Crabb's affidavit, we disagree with this statement.

We overrule Bass Drum and Aguilar's second issue.

### 3. The Amounts Owed

By its next issue, Bass Drum and Aguilar assert that the trial court erred when it granted summary judgment "as to amounts alleged to be owing for breach of a bank-account agreement because a genuine issue of material fact existed as to the existence of the alleged breach, as to the amount due arising from any such breach; and as to any personal liability of . . . Aguilar on the said account."

9

To prove that Bass Drum overdrew on its checking account, First National Bank submitted the checking account agreement and the affidavit of Gloria Rios testifying that the account holder overdrew $4,854.13. These pieces of evidence were uncontroverted by Bass Drum or Aguilar in their responses to the motion for summary judgment. *See Great Am. Reserve Ins. Co.*, 391 S.W.2d at 47 (holding that a reviewing court can consider evidence favorable to the movant only when it is uncontroverted).

With regard to Aguilar's liability, the Guaranty she signed clearly states that she guaranteed the Note, deed of trust, and "any other document executed by Borrower evidencing or securing the note." "A guaranty creates a secondary obligation whereby the guarantor promises to answer for the debt of another and may be called upon to perform once the primary obligor has failed to perform." *Eubank v. First Nat'l Bank*, 814 S.W.2d 130, 133 (Tex. App.—Corpus Christi 1991, no writ). "By definition, it is an undertaking by a third person to another to answer for the payment of a debt, incurred by a named person, in the event that the named person fails to pay." *Id*.

The checking account with First National Bank qualified as "any other document executed by Borrower [Bass Drum] evidencing or security the note" because the Note stated the bank had "rights of offset as to any funds or property of [Bass Drum] from time to time on deposit with or in possession of [First National Bank]." The funds in Bass Drum's checking account were in First National Bank's possession. And, in the Guaranty's opening paragraph, Aguilar contracted to guaranty the payment of the Note, the deed of trust, "and any other document executed by Borrower [Bass Drum] evidencing or securing the note." Based on the foregoing language, we conclude that

10

Aguilar's Guaranty extended to the overdrawn checking account. We overrule this issue.

### III. CONSIDERATION OF THE LETTER REPLY BRIEF

As their third issue, Bass Drum and Aguilar claim that the letter brief submitted by First National Bank prior to the summary judgment hearing should have been struck as untimely. By way of a timeline, First National Bank submitted its motion for summary judgment, along with evidentiary exhibits, on June 15, 2010. Bass Drum and Aguilar filed separate responses on September 3, 2010. First National Bank then filed a letter brief with the court on September 14, 2010. The letter brief replied to the appellees' responses but did not include any additional evidence to support First National Bank's motion for summary judgment. And even though the letter brief was filed past the date of submission, it was not accompanied by a motion for leave to file it past this date. *See Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996) (concluding that "summary judgment evidence may be filed late, but only with leave of court"). Both Bass Drum and Aguilar then filed motions to strike the letter brief the next day, September 15, 2010.

Neither Bass Drum nor Aguilar received a ruling on their motion to strike the letter brief. To preserve a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial court, and the trial court ruled on the request, objection, or motion. *See* TEX. R. APP. P. 33.1(a). Assuming without deciding that error was preserved, though, we find no evidence in the

11

record that the trial court considered the letter reply brief when granting the summary judgment motion. The order granting the motion simply states that the trial court "considered the pleading[s] and official records on file in this cause, the evidence, and the arguments of counsel."

Even if error had been preserved, because there is no evidence in the record that the trial court relied on an untimely-filed letter brief to grant this motion for summary judgment, we overrule this issue.

## IV. THE AWARD OF CONTINGENT ATTORNEY'S FEES

Bass Drum and Aguilar's fifth issue contends that the trial court erred in awarding contingent attorney's fees to First National Bank if Bass Drum chose to appeal the case to the court of appeals or the Supreme Court of Texas. The record shows that First National Bank submitted the affidavit of bank attorney Carlos Yzaguirre in support of this award. Yzaguirre's affidavit provides that he is personally familiar with the lawsuit and that a "significant portion of [his] practice is devoted to commercial litigation for area creditors." Yzaguirre avers that he is "familiar with attorney's fees charged in South Texas" and with "the factors which should be considered in setting attorneys' fees pursuant to . . . applicable law." Yzaguirre then proceeds to list eight factors which he considered in calculating his attorneys' fees and the expected attorneys' fees in the event of an appeal, which mirror the *Arthur Andersen* factors set forth by the Texas Supreme Court. *See Arthur Andersen & Co. v. Perry Equipment*, 945 S.W.2d 812, 818 (Tex. 1997). After establishing his expertise and knowledge of the case, Yzaguirre stated that his customary legal fee was $250 per hour and that he worked on this case

12

for approximately nine hours, leading to a bill of $2,200. Yzaguirre finally surmises that it would take $15,000 to appeal this case to a court of appeals and another $15,000 for an appeal to the Texas Supreme Court.

Neither Bass Drum nor Aguilar controverted Yzaguirre's affidavit. We note that rule 166a(c) recognizes that a movant can establish its right to summary judgment based solely on the uncontroverted testimony of an expert witness if: (1) the subject matter is such that a trier of fact would be guided solely by the opinion testimony of an expert; (2) the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies; and (3) the evidence could have been readily controverted. *See* TEX. R. CIV. P. 166a(c); *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991). These criteria are satisfied here. We overrule this issue.

## V. CONCLUSION

Because we have overruled all of appellants' issues, we affirm the judgments of the trial court.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
2nd day of August, 2012.