Ivo DWORSCHAK, Appellant,

v.

**TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., Appellee.**

No. 14–10–00758–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 20, 2011.

Waverly R. Nolley, Houston, for appellant.

Laura Jeanne Goodson, Neil Martin, Houston, for appellee.

Panel consists of Justices ANDERSON, BROWN, and CHRISTOPHER.

## OPINION

JEFFREY V. BROWN, Justice.

Appellant, Ivo Dworschak, appeals the trial court's granting of a no-evidence summary judgment in favor of Transocean Offshore Deepwater Drilling, Inc. We affirm.

### I

On March 26, 2008, Dworschak was employed in Singapore as a senior project manager for Transocean. As part of his duties, he participated in a meeting to discuss a particular project. According to meeting notes taken by a Transocean employee, five Transocean employees and three representatives of a subcontractor, Sembawang Shipyard Pte. Ltd. (SSPL), attended the meeting. The discussion became acrimonious when a disagreement arose about the schedule for meeting project deadlines.

Several witnesses reported Dworschak became upset and tore up documents. Jit Singh, an employee of SSPL, stood up to leave the meeting room. SSPL employee S.J. Chang asserts in his witness statement that Dworschak blocked Singh's exit, grabbed him by the arm, and pushed him. Singh fell into a chair. Other people intervened and the meeting was terminated after Singh fell.

Dworschak's accounts of the incident have varied. According to the deposition he gave in 2009, he was pleading with Singh not to leave the room, but Singh "lower[ed] his head and he was pushing himself against" Dworschak. In an affidavit given months later, however, Dworschak explains that the meeting room was narrow and Singh had little room to maneuver when he decided to leave. Dworschak maintains Singh approached him while leaving, and Dworschak stood up and requested that Singh return to his seat to conclude the meeting. He explains:

> Since I was standing up, and my chair was squeezed against the wall, there was no room free for him to pass behind me . . . . [W]e eventually became very close to each other, while he was trying to pass [between] me and the wall. Upon light contact he moved backwards and he tripped over a displaced chair on his back and sat down. I did not push Mr. Jit Singh . . . .

The incident was reported to Dick Verhaagen, director of projects for the Asia–Pacific unit of Transocean. In an affidavit, Verhaagen testifies that he then notified both Charles Keeton, director of projects, and Transocean's human-resources department. He also requested witness statements from all meeting attendees. Verhaagen asserts he and Keeton decided

Dworschak should leave Singapore and return to Houston immediately. On the date of the incident, Verhaagen emailed several people that effective immediately, another Transocean employee, Lee O'Brien, would be in charge of the project Dworschak had been leading.

The affidavit indicates that "[a]fter reviewing the statements of witnesses to the altercation, meeting with Mr. [Dworschak] and hearing his admission to pushing the [SSPL] employee, Transocean terminated Mr. Dworschak ... on April 18, 2008." In an email to Verhaagen that same day, Keeton states:

> Meeting is over. [Dworschak] admitted he was wrong in blocking the exit and pushing [Singh] and was responsible for his actions. He felt severance was too harsh [but] my position was [that] the actions alone were intolerable, [and] such actions from a [senior project manager] are completely unacceptable. As a result I terminated him with two weeks' severance.

Dworschak argues the termination was pretextual. He asserts the true reason for his termination was that he discovered "certain billing and other irregularities" between a subcontractor and Verhaagen and he reported his concerns to Transocean's legal department. He also contends that informing personnel that O'Brien was in charge of the project on the same day as the incident "indicates the premeditation of Verhaagen's plans to retaliate against [Dworschak] for blowing the whistle on [Verhaagen's] questionable relationship with the sub-contractor."

On September 24, 2008, Dworschak filed his original petition in the trial court asserting claims for (1) breach of contract; (2) wrongful discharge; (3) intentional infliction of emotional distress; (4) libel, slander and defamation; (5) business disparagement; and (6) age discrimination. After discovery, Transocean filed both a traditional and a no-evidence motion for summary judgment on all of the claims listed above. The trial court granted the no-evidence motion for summary judgment, which Dworschak now appeals to this court.

## II

### A

■■■ In a no-evidence motion for summary judgment, the movant must specifically state the elements as to which there is no evidence. *Walker v. Thomasson Lumber Co.*, 203 S.W.3d 470, 473–74 (Tex. App.-Houston [14th Dist.] 2006, no pet.). The trial court must grant the motion unless the non-movant produces summary-judgment evidence raising a genuine issue of material fact on each of the challenged elements. Tex.R. Civ. P. 166a(i). However, the non-movant is not required to marshal his proof; his response need only point out evidence that raises a fact issue on the challenged elements. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex.2008) (per curiam).

■■■ A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal-sufficiency standard in reviewing a no-evidence summary judgment that we apply in reviewing a directed verdict. *Mathis v. Restoration Builders, Inc.*, 231 S.W.3d 47, 50 (Tex.App.-Houston [14th Dist.] 2007, no pet.). We review the entire record in the light most favorable to the non-movant, indulging every reasonable inference and resolving any doubts against the motion. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex.2005). We sustain a no-evidence summary judgment if: (1) there is a complete absence of proof of a vital fact; (2) the rules of law or evidence bar the court from giving weight to the only evidence

offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Walker*, 203 S.W.3d at 474. Less than a scintilla of evidence exists when the evidence offered to prove a vital fact is so weak it does no more than create the mere surmise or suspicion of its existence and, in legal effect, is no evidence. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex.2004). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions as to the existence of the vital fact. *Id.*

■■ We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). In an appeal from a summary judgment, the issues an appellate court may review are those the movant actually presented to the trial court. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex.1996). If an appellant fails to challenge each independent ground on which a summary judgment is based, the summary judgment should be affirmed. *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 875 (Tex.App.-Dallas 2005, no pet.).

### B

#### 1. Breach of Contract

■ Employment in Texas is presumed to be at-will. *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex.1998). "[A]bsent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will for good cause, bad cause, or no cause at all." *Id.* To alter the at-will employment status, "the employer must unequivocally indicate a definite intent to be bound not to terminate the employee

except under clearly specified circumstances." *Id.* It is the employee's burden to prove that the presumed at-will relationship was altered. *Durckel v. St. Joseph Hosp.*, 78 S.W.3d 576, 581 (Tex.App.-Houston [14th Dist.] 2002, no pet.).

Dworschak argues he had an employment contract with Transocean that Transocean breached by terminating him. In Dworschak's affidavit dated April 2010, he asserts he had a "formal employment contract" with Transocean. He also proffers two "Assignment Memoranda" detailing Transocean's offer of job title, salary, vacation time, and other details of employment; one is dated April 12, 2006, and the other March 17, 2007. However, each memorandum expressly provides it "does not constitute a contract of employment." Moreover, each also provides that "[b]y acknowledgement of receipt of this memo," Dworschak affirms that he has "been informed of the 'at will' nature of employment with [Transocean] ... and [his] subsequent acceptance of this as a condition of employment." Dworschak signed the second of the two memoranda.

■ Although there was a formal contract between Dworschak and Transocean, it was specifically an at-will agreement. As a result, Dworschak has failed to meet his burden to overcome the presumption that his employment was at-will. *See Durckel*, 78 S.W.3d at 581. There is no material fact question regarding Dworschak's at-will status. *See Walker*, 203 S.W.3d at 474. As an at-will employee, Dworschak contractually agreed he could be terminated for any reason. *See Montgomery County*, 965 S.W.2d at 502. The trial court correctly granted summary judgment on Dworschak's breach-of-contract claim.

#### 2. Wrongful Discharge

Dworschak claims he was wrongfully discharged because Transocean terminated him in contravention of the policies and procedures listed in the company's human-resources manual. The record includes Transocean's policy on equal employment, termination for cause, and discipline. We have determined Dworschak was an at-will employee. Dworschak has not cited to any case law showing general company policies create an employment contract when the signed agreement between the employee and employer specifically provides that the employment is at-will. Consequently, we conclude he has not provided any evidence of a vital fact. *See Walker*, 203 S.W.3d at 474.

We also note Dworschak argued in the trial court that the reason for Dworschak's wrongful termination is that he allegedly reported improper behavior of a superior to the corporation. Dworschak has not made that argument to this court, so it is waived. Tex.R.App. P. 38.1(i). As a result, we conclude the trial court did not err when it granted Transocean's no-evidence summary-judgment motion on Dworschak's claim for wrongful discharge.

### 3. Intentional Infliction of Emotional Distress

 There are four elements to an intentional-infliction-of-emotional-distress claim: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the plaintiff's emotional distress was severe. *Tex. Farm Bureau Mut. Ins. Co. v. Sears*, 84 S.W.3d 604, 610 (Tex.2002). Extreme and outrageous behavior by the defendant must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993)).

Dworschak contends he suffered from intentional infliction of emotional distress as a result of his termination. According to Dworschak, Transocean acted intentionally or recklessly by failing to investigate the incident, and treated him extremely and outrageously both during the termination process and after he was terminated. In his affidavit, Dworschak states he suffered severe emotional stress because he lost income and "would have a difficult time obtaining employment commensurate with that he had obtained at [Transocean]."

Dworschak claims Verhaagen failed to follow Transocean policy during and after the termination because: (1) Dworschak was not rehired once new positions became available, which Dworschak alleges is in contravention of the Transocean Equal Opportunity policy; (2) Verhaagen officially fired Dworschak on March 26, 2008, without a review of the termination; (3) Verhaagen did not follow the official disciplinary policy of Transocean because Dworschak did not receive a warning about his alleged behavior and an opportunity to modify his actions before termination.

Transocean's discipline policy describes a procedure for providing an employee with escalating warnings about offenses before ultimately terminating him. But the policy also provides that the "statements contained herein in no way modify or amend the existing employment at-will relationship between [Transocean] and the employee." Dworschak's argument that he could not be terminated without first receiving warnings fails because an at-will relationship does not require any notice or warnings before termination. *Montgomery County*, 965 S.W.2d at 502. In addition, as an at-will employee, Transocean

owed Dworschak no duty to retain or re-hire him. *Id.*

Dworschak fails to show any of his claims amount to allegations of extreme and outrageous conduct by Transocean. "[O]rdinary employment disputes" do not give rise to claims for intentional infliction of emotional distress. *GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 612 (Tex.1999). And only " 'in the most unusual of circumstances' is conduct so extreme and outrageous that is removed from the realm of ordinary employment disputes." *Wal–Mart Stores, Inc. v. Canchola,* 121 S.W.3d 735, 741 (Tex.2003) (per curiam) (quoting *GTE Southwest,* 998 S.W.2d at 613). Wrongfully terminating an employee "does not, standing alone, constitute intentional infliction of emotional distress." *City of Midland v. O'Bryant,* 18 S.W.3d 209, 217 (Tex.2000). Neither do "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *GTE Southwest,* 998 S.W.2d at 612.

Transocean's conduct in investigating the incident and terminating Dworschak "was understandably unpleasant for him," but the entire affair was nevertheless an ordinary employment dispute. *See Wal–Mart Stores,* 121 S.W.3d at 742. Moreover, even assuming the truth of Dworschak's thin allegations, Transocean's "conduct was 'within the bounds of its discretion to supervise, review, discipline, and ultimately terminate' its employees." *See id.* (quoting *Texas Farm Bureau,* 84 S.W.3d at 611). Accordingly, we cannot conclude that the allegations Dworschak makes rise to the level of conduct "beyond all possible bounds of decency." *See Texas Farm Bureau,* 84 S.W.3d at 610. The trial court correctly decided Dworschak failed to raise a fact issue on an essential element of intentional infliction of emotional distress.

*4. Defamation*

Dworschak contends Transocean defamed him. "To maintain a defamation cause of action, the plaintiff must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement." *WFAA–TV, Inc. v. McLemore,* 978 S.W.2d 568, 571 (Tex.1998).

In his brief, Dworschak alleges that Transocean defamed him when it "published and republished a statement of fact to a third person" that referred to Dworschak, was defamatory, and "was made without legal excuse and was false and used as a pretext to wrongfully terminate" him. But Dworschak does not specify any statement in particular, how the statement was defamatory, or how Transocean allegedly knew the statement was false. Instead, he directs us to more than one hundred pages of the clerk's record. We conclude Dworschak has waived this issue on appeal. *See* Tex.R.App. P. 38.1(i); *Denmon v. Atlas Leasing, L.L.C.,* 285 S.W.3d 591, 597 (Tex.App.-Dallas 2009, no pet.).

*5. Business Disparagement*

Dworschak has also asserted a claim for business disparagement, which requires proof of four elements: (1) the defendant published false and disparaging information about the plaintiff; (2) with malice; (3) without privilege; (4) that resulted in special damages to the plaintiff. *Forbes Inc. v. Granada Biosciences, Inc.,* 124 S.W.3d 167, 170 (Tex.2003). To show malice, the plaintiff must prove that the statements were made with knowledge they were false, with reckless disregard about the statements' truth, or with ill will

or an intent to interfere with the plaintiff's economic interest. *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987).

In its no-evidence motion for summary judgment, Transocean challenged the second element, asserting that Dworschak could provide no evidence that Transocean acted with malice. Specifically, Transocean denies knowing the allegation about Dworschak physically assaulting Singh is false, or acting with reckless disregard, or with an ill will or an intent to interfere with Dworschak's economic interest. Indeed, Transocean maintains the allegation is not false at all.

In the appellate record, there are multiple eyewitness accounts that Dworschak "pushed" Singh. These include the meeting notes kept by Ian Ritchie and the witness statements of S.J. Chang, Robert Sandoval, and Lee O'Brien. Mardonildo Filho, another witness, described the incident by writing, "[Singh] tried to exit the meeting room when [Dworschak] had physical contact with [Singh] causing [Singh] to lose balance. The [SSPL] engineer stood between the two asking [Dworschak] to stay away and never do this again."

■ In his affidavit, Dworschak describes the events as accidental. In his deposition, Dworschak claims Singh was the aggressor in the physical altercation. Beyond his own versions of the story, however, Dworschak has not shown Transocean had any reason to believe the witness reports were untrue or made with ill will. This amounts to no evidence of malice. *See Forbes*, 124 S.W.3d at 170; *Hurlbut*, 749 S.W.2d at 766. We conclude the trial court did not err in granting Transocean's summary-judgment motion on business disparagement.

### 6. Age Discrimination

■ Dworschak also asserts a claim for age discrimination, which consists of four elements: (1) the plaintiff is a member of the protected class; (2) the plaintiff was discharged; (3) the plaintiff was qualified for the position from which he was discharged; (4) the plaintiff was replaced by someone outside the protected class or was otherwise discharged because of his age. *Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 435 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). The protected class in an age-discrimination suit is restricted to people forty years of age or older. Tex. Lab.Code § 21.101.

In its no-evidence motion, Transocean challenges the third and fourth elements, but also contends Dworschak "cannot bring a cause of action for age discrimination under the [Texas Commission on Human Rights Act] (TCHRA) due to his failure to exhaust his administrative remedies." Transocean likewise asserts Dworschak's failure to exhaust his administrative remedies in a traditional motion for summary judgment filed the same day as the no-evidence motion. Dworschak filed one response to both motions. In that response, Dworschak proffers evidence supporting the third and fourth elements, but does not respond at all to the allegation that he failed to exhaust his administrative remedies.

■ Under the TCHRA, a person claiming to be aggrieved by an unlawful employment practice, including an act of age discrimination, must file a complaint with the Texas Workforce Commission not later than the 180th day after the date the alleged unlawful employment practice occurred. *See* Tex. Labor Code § 21.202(a). This administrative step is required before the person may seek relief in a civil action. *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 487–88 (Tex.1991) (concluding that "exhaustion of administrative reme-

dies is a mandatory prerequisite to filing a civil action alleging violations of the [TCHRA]"), *overruled in part on other grounds by In re United Servs. Auto. Ass'n,* 307 S.W.3d 299 (Tex.2010); *see also Waffle House, Inc. v. Williams,* 313 S.W.3d 796, 804 (Tex.2010) (citing *Schroeder,* 813 S.W.2d at 487).

 Moreover, when a statute requires the exhaustion of administrative remedies before a plaintiff may file suit, the plaintiff also bears the burden to show he has met the prerequisite to suit. *Permian Basin Cmty. Ctrs. for Mental Health & Mental Retardation v. Johns,* 951 S.W.2d 497, 502 (Tex.App.-El Paso 1997, no writ); *Methodist Hosps. of Dallas v. Texas Workers' Comp. Comm'n,* 874 S.W.2d 144, 149 (Tex. App.-Austin 1994, no writ); *Rodriguez v. Am. Gen. Fire & Cas. Co.,* 788 S.W.2d 583, 585 (Tex.App.-El Paso 1990, writ denied). The burden is on Dworschak, therefore, to prove he has exhausted his administrative remedies. Because Dworschak bears the burden of proof on this issue, it is appropriately the subject of a no-evidence motion for summary judgment. *See Hamilton,* 249 S.W.3d at 426; Tex.R. Civ. P. 166a(i).

 Under Rule 166a(i), a no-evidence motion for summary judgment "must be specific in challenging the evidentiary support for an element of a claim or defense; paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case." Tex.R. Civ. P. 166a(i) (cmt. 1997). "The underlying purpose of this requirement 'is to provide the opposing party with adequate information for opposing the motion, and to define the issues for the purpose of summary judgment.'" *Timpte Indus., Inc. v. Gish,* 286 S.W.3d 306, 311 (Tex. 2009) (quoting *Westchester Fire Ins. Co. v. Alvarez,* 576 S.W.2d 771, 772 (Tex.1978)). The Supreme Court of Texas has "analo-

gized this purpose to that of the 'fair notice' pleading requirements of Rules 45(b) and 47(a)." *Id.* (citing *Westchester Fire,* 576 S.W.2d at 772–73).

 Transocean's no-evidence motion gives fair notice to Dworschak that it was challenging his failure to exhaust his administrative remedies before suing for age-discrimination in a civil action. Despite this notice, Dworschak attaches no evidence and otherwise makes no attempt in his response to the summary-judgment motions to raise a fact issue on the question of exhaustion of remedies. Accordingly, the trial court correctly granted summary judgment on Dworschak's age-discrimination claim.

\*　　\*　　\*

We affirm the trial court's no-evidence summary judgment.