**Affirmed and Memorandum Opinion filed April 27, 2023.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-22-00001-CV

---

## STANLEY C. NWOKENKWO, INDIVIDUALLY, ADEWUMI ADENIYI, INDIVIDUALLY, AND OLUWATOYIN ADENIYI, INDIVIDUALLY, Appellants

### V.

## JP MORGAN CHASE BANK, N.A., Appellee

---

**On Appeal from the 129th District Court
Harris County, Texas
Trial Court Cause No. 2019-53231A**

---

## MEMORANDUM OPINION

Appellee JP Morgan Chase Bank, N.A. sued appellants Stanley C. Nwokenkwo, Adewumi Adeniyi, and Oluwatoyin Adeniyi for breach of contract. The trial court rendered summary judgment in favor of Chase, and appellants appeal, challenging the trial court's order (1) granting summary judgment favoring Chase and (2) severing Chase's breach of contract claims from appellants' separate third-party action. Concluding that Chase established its right to judgment as a matter of

law and severance was proper, we affirm.

## *Background*

Nwokenkwo and the Adeniyis, along with Chinonye J. Abakwue and Udochukwu Abakwue, were members of Apex Dialysis and Pharmacy, LLC, a Texas limited liability company located in Sugar Land, Texas.[1] Chase loaned Apex monies documented in three separate notes, each note was secured by a security agreement and accompanied by personal guaranties executed by Nwokenkwo, the Adeniyis, and the Abakwues in favor of Chase to secure financing for Apex.

**Note 1.** On October 12, 2016, Apex executed a promissory note in favor of Chase, showing that Chase loaned Apex $1,505,608 with a variable interest rate (Note 1). Apex's first payment on Note 1 was due on November 12, 2016. Apex agreed to pay, in one payment, all outstanding principal plus all accrued interest on October 12, 2017. Note 1 was a non-revolving line of credit, and it was executed by the five members of Apex. On this same date, to secure Note 1, Nwokenkwo, the Adeniyis, and the Abakwues each executed a Commercial Guaranty under which they agreed that:

> The amount of this Guaranty is Unlimited. . . . For good and valuable consideration, [Guarantor] absolutely and unconditionally guarantees and promises to pay to JPMorgan Chase Bank, N.A. ("Lender") . . . the indebtedness . . . of Apex Dialysis and Pharmacy, LLC ("Borrower") to Lender on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing. . . . Each of the following shall constitute an event of default ("Event of Default") under this Note: Borrower fails to make any payment when due under this Note.

Further, to secure Note 1, Apex contemporaneously signed a Commercial

---

[1] Nwokenkwo, the Adeniyis, and the Abakwues are shareholders and directors of Apex. Apex and the Abakwues are not parties to this appeal but are referenced for clarification purposes.

2

Security Agreement granting Chase a security interest in certain personal property of Apex, including all accounts, chattel paper, equipment, general intangibles, instruments, and inventory. The Adeniyis each signed a deed of trust in favor of Chase on real property located in Houston, Texas. Chase recorded the deed of trust in the Harris County real property records on February 16, 2017.

On February 16, 2017, Note 1 was renewed in the amount of $1,791,978. Again, Nwokenkwo, the Adeniyis, and the Abakwues each executed a new Commercial Guaranty with identical terms as their prior guaranties. Note 1 was later modified by the Change in Terms Agreement dated December 19, 2017, which stated:

> Borrower has requested that the Note be modified to the limited extent as hereinafter set forth, and Lender hereby agrees to such modification as evidenced by Lender's acceptance and booking of the terms of this Change in Terms Agreement ("Agreement"). The Note and obligations of Borrower are secured by a security interest in and lien upon all collateral described in all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents. . . . The following provisions are deemed to be part of the Note, and any contrary provisions in the Note are deemed to be modified hereby: The date on which the outstanding principal balance of the note, together with all accrued and unpaid interest and other charges, shall be due and payable is changed from November 16, 2017 to January 16, 2018. Until such date, Borrower shall continue to make periodic payments as provided in the Note. . . . This Agreement is a modification only and not a novation.

Apex failed to make the payments on Note 1, triggering a default. Nwokenkwo, the Adeniyis, and the Abakwues failed to cure the default of Apex on Note 1. As of October 9, 2020, Chase is owed for the principal balance of $1,791,978, accrued interest of $58,092.59, plus late fees and costs of $500 for a

3

total of $1,850,570.59.

**Note 2.** On October 12, 2016, Apex executed a line of credit note in favor of Chase, indicating that Chase loaned Apex $200,000 at 2.5% annual interest (Note 2). Under the terms of Note 2,

> Apex Dialysis and Pharmacy, LLC (the "Borrower") promise[d] to pay JPMorgan Chase Bank, N.A. . . . the sum of Two Hundred Thousand and 00/100 ($200,000) or so much thereof as may be advanced and outstanding: Accrued interest of $100.00, whichever is greater, but not to exceed the then outstanding balance of this Note, shall be payable monthly, beginning on November 12, 2016 and on the same calendar day monthly thereafter until the Final Availability Date. . . . If any of the following events occurs, the Note shall become due immediately, without notice, at the Bank's option, and the Borrower hereby waives notice of intent to accelerate the maturity of the Note and notice of acceleration of the Note upon the occurrence of any of the following events: (A) Any obligor fails to pay when due any of the liabilities or any other debt to any Person, or any amount payable with respect to any of the Liabilities, or under the Note, any other Related Document, or any agreement or instrument evidencing other debt to any Person.

Apex's first payment on Note 2 was due on November 12, 2016, followed by forty-seven consecutive monthly payments. To secure Note 2, Apex contemporaneously executed a Commercial Security Agreement granting Chase a security interest in certain personal property of Apex, including all accounts, chattel paper, equipment, general intangibles, instruments, and inventory. Nwokenkwo, the Adeniyis, and the Abakwues each executed a Commercial Guaranty under which each agreed that:

> To induce JPMorgan Chase Bank, N.A. . . . to make financial accommodations, make or acquire loans, extend or continue credit or some other benefit . . . to Apex Dialysis and Pharmacy, LLC . . . [Guarantor] has determined that executing this Guaranty is in its interest and to its financial benefit, the Guarantor absolutely and unconditionally guarantees to the Bank the performance of and full and

4

prompt payment of the Liabilities when due, whether at stated maturity, by acceleration or otherwise, provided however, that the Liabilities shall not include any Excluded Swap Obligations. . . . The Guarantor will not only pay the Liabilities, but will also reimburse the Bank for any fees, charges, costs and expenses, including reasonable attorneys' fees (including fees and expenses of counsel for the Bank that are employees of the Bank or its affiliates) and court costs, that the Bank may pay in collecting from the Borrower or the Guarantor, and for liquidating any Collateral . . . both before and after judgment.

Apex failed to make the payments on Note 2, triggering a default. Nwokenkwo, the Adeniyis, and the Abakwues failed to cure the default of Apex on Note 2. As of October 9, 2020, Chase is owed for the principal balance of $199,982.50, accrued interest of $27,242.40, plus late fees and costs of $1,464.99 for a total of $228,689.89. Interest continued to accrue on Note 2 until the date of judgment at a variable interest rate of 2.5% over the Prime Rate.[2]

**Note 3.** On July 26, 2017, Apex executed a U.S. Small Business Administration Note in favor of Chase, showing that Chase loaned Apex $625,500 at an initial interest rate of 5.30% per year (Note 3). Note 3 matured on July 26, 2022. Apex's first payment on Note 3 was due on August 26, 2017, followed by monthly payments of $10,973.68. To secure Note 3, Apex contemporaneously executed a Commercial Security Agreement granting Chase a security interest in certain personal property of Apex, including all accounts, chattel paper, equipment, general intangibles, instruments, and inventory. Nwokenkwo, the Adeniyis, and the Abakwues each executed a Commercial Guaranty under which each agreed that:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until

---

[2] According to the terms of Note 2, "Prime Rate" means the rate of interest per annum announced from time to time by Chase as its prime rate. The Prime Rate is a variable rate and each change in the Prime Rate is effective from and including the date the change is announced as being effective.

the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

Apex failed to make the payments on Note 3, triggering a default. Nwokenkwo, the Adeniyis, and the Abakwues failed to cure the default of Apex on Note 3. As of October 9, 2020, Chase is owed for the principal balance of $536,818.44, accrued interest of $82,800.91, plus late fees and costs of $5,902.17 for a total of $625,521.52. Interest continued to accrue on Note 3 until the date of judgment at a variable interest rate of 1.3% over the LIBOR Base Rate.[3]

On August 2, 2019, Chase filed suit against Apex, Nwokenkwo, the Adeniyis, and the Abakwues. Chase alleged breach of contract claims against Apex based on its nonpayment of Notes 1, 2, and 3. Chase also raised claims for breach of contract against Nwokenkwo, the Adeniyis, and the Abakwues based on their continuing guaranties and failure to cure the default of Apex on Notes 1, 2, and 3. Nwokenkwo and the Adeniyis answered Chase's petition through a general denial and raised fifteen affirmative defenses: (1) supervening impossibility, (2) accord and satisfaction, (3) novation, (4) unconscionability, (5) failure to mitigate damages, (6) laches, (7) waiver, (8) estoppel, (9) unclean hands, (10) fraud, (11) consent, (12) modification, (13) no breach of the contract or agreement, (14) circumstances and events outside and beyond appellants' control, and (15) the economic loss rule.

On December 4, 2019, Chase initiated a nonjudicial foreclosure on the personal property secured by the security agreement based on Note 1. Chase

---

[3] According to the terms of Note 3, the "LIBOR Base Rate" is the combination of the One Month London Interbank Offered Rate in effect on the first business day of the month (as published in a national financial newspaper or website) in which SBA received the application, or any interest rate change occurs, plus an additional 3 percentage points. Moreover, the adjusted rate will be 1.07% above the LIBOR Base Rate.

purportedly applied the sales proceeds to the deficiency. Thereafter, Chase amended its petition. However, the balances owed on Notes 1, 2, and 3 did not decrease. On December 11, 2019, Nwokenkwo and the Adeniyis initiated a separate third-party action against Apex, the Abakwues, and Prince Ucheche Nwakanma in Fort Bend County. Nwokenkwo and the Adeniyis alleged that Nwakanma and the Abakwues attempted to deprive them of their membership interest in Apex.[4]

On October 29, 2020, Chase filed its hybrid motion for summary judgment on its breach of contract claims and Nwokenkwo's and the Adeniyis' affirmative defenses, seeking to recover the unpaid balances on Notes 1, 2, and 3 and asserting that there was no evidence supporting Nwokenkwo and the Adeniyis' affirmative defenses. As summary judgment evidence, Chase provided copies of the notes, the accompanying security agreements for each note, each personal guaranty executed by Nwokenkwo, the Adeniyis, and the Abakwues, and an affidavit of Charles F. Schottler, Jr., a Special Credits Risk Officer with the corporate title of Vice President. Schottler averred he was one of Chase's employees responsible for managing loans to Apex and that the attached records were kept by Chase in the regular course of business. Chase asserted in its motion for summary judgment that these documents established its right to recover the amount due from Apex, Nwokenkwo, the Adeniyis, and the Abakwues.

Nwokenkwo and the Adeniyis responded, arguing that Chase did not distinguish among the named defendants in its causes of action, assumed they have like liabilities, and does not recognize the effect of their third-party action against Apex, Nwakanma, and the Abakwues for fraud, breach of contract, breach of

---

[4] Nwokenkwo and the Adeniyis alleged that Nwakanma does not appear as a member of Apex. However, they urge that Nwakanma has exercised control over Apex, fraudulently induced them into signing the personal guaranties, and used the monies obtained by Apex for the personal benefit of himself and the Abakwues.

fiduciary duty, and other claims. They also argued that Chase failed to demonstrate its entitlement to judgment as a matter of law on its breach of contract or personal guaranties claims.

The trial court granted Chase's hybrid motion on November 4, 2021, without specifying the basis for the ruling. Subsequently, Chase requested that the trial court sever its claims against Apex, Nwokenkwo, the Adeniyis, and the Abakwues from the third-party claims filed by Nwokenkwo and the Adeniyis so that the interlocutory summary judgment could become final. Nwokenkwo and the Adeniyis opposed Chase's motion, alleging that Chase was a necessary party to their claims against Nwakanma and the Abakwues. The trial court severed Chase's claims against Apex, Nwokenkwo, the Adeniyis, and the Abakwues and assigned a new cause number and style. This appeal followed.

## *Discussion*

The summary judgment standards of review are well-known. We review a summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Wyly v. Integrity Ins. Sol.*, 502 S.W.3d 901, 904 (Tex. App.—Houston [14th Dist.] 2016, no pet.). We review the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005); *see also Fielding*, 289 S.W.3d at 848.

When a party seeks summary judgment on no-evidence and traditional grounds, we generally review the no-evidence grounds first. *See PAS, Inc. v. Engel*, 350 S.W.3d 602, 607 (Tex. App.—Houston [14th Dist.] 2011, no pet.). To prevail on a no-evidence summary judgment, the movant must allege that no evidence exists

to support one or more essential elements of a claim for which the nonmovant bears the burden of proof at trial. *Id.* (citing Tex. R. Civ. P. 166a(i); *Kane v. Cameron Int'l Corp.*, 331 S.W.3d 145, 147 (Tex. App.—Houston [14th Dist.] 2011, no pet.)). A no-evidence motion may not be conclusory but must instead give fair notice to the non-movant as to the specific element or elements of the nonmovant's claim that are being challenged. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310–11 (Tex. 2009); *see also Engel*, 350 S.W.3d at 607 (explaining that the motion must specifically state the elements for which there is no evidence). The nonmovant must then present evidence raising a genuine issue of material fact on the challenged elements. *Gish*, 286 S.W.3d at 310. A fact issue exists when there is more than a scintilla of probative evidence. *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012) (per curiam). More than a scintilla of evidence is present when evidence rises to a level that would allow reasonable and fair-minded people to differ in their conclusions as to the existence of a vital fact. *Dworschak v. Transocean Offshore Deepwater Drilling, Inc.*, 352 S.W.3d 191, 196 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)).

The party moving for traditional summary judgment bears the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *See Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018); *see also Fielding*, 289 S.W.3d at 848 (citing Tex. R. Civ. P. 166a(c)). If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755

(Tex. 2007). In reviewing the grant of summary judgment, we must credit evidence favoring the nonmovant, indulging every reasonable inference and resolving all doubts in his or her favor. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995).

## I. Summary Judgment was Proper As a Matter of Law

In their first issue, Nwokenkwo and the Adeniyis contend that the trial court did not have the authority to grant the affirmative relief requested by Chase's motion for summary judgment because Chase did not expressly set forth the elements of breach of guaranty or demonstrate evidence to support summary judgment for suit on a guaranty. Nwokenkwo and the Adeniyis also argue that Chase is not entitled to summary judgment because Chase was required, but failed, to establish that it was entitled to summary judgment notwithstanding their affirmative defenses. Because Chase conclusively established each element of its claim of breach and Nwokenkwo and the Adeniyis failed to raise a genuine issue of material fact precluding summary judgment, we find that summary judgment was proper. *See Lujan*, 555 S.W.3d at 84.

### A. No-Evidence Summary Judgment

We first examine the propriety of the trial court's summary judgment in Chase's favor, beginning with the no-evidence grounds. As discussed above, Nwokenkwo and the Adeniyis raised fifteen affirmative defenses in response to Chase's breach of contract claims. On appeal, Nwokenkwo and the Adeniyis only complain regarding six affirmative defenses, as such, our review is limited to: (1) lack of consideration, (2) assumption, (3) impossibility, (4) failure to mitigate, (5) unconscionability, and (6) fraud.

As an initial matter, we decline to address the affirmative defense of assumption. In their brief, Nwokenkwo and the Adeniyis alleged that any obligations

10

under the guaranties were effectively terminated upon their ouster from Apex and assumption of liability by Nwakanma and the Abakwues. Nwokenkwo and the Adeniyis, however, did not raise this affirmative defense in their answer and cannot raise this issue for the first time on appeal. *See* Tex. R. App. P. 33.1(a); *see also Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991) (holding that hen a defendant relies on an affirmative defense it must specifically plead the defense in its answer).

We address the remaining affirmative defenses in turn. Chase's motion for summary judgment asserted that there was no evidence to support any of them. Accordingly, the burden shifted to Nwokenkwo and the Adeniyis to present more than a scintilla of evidence raising a genuine fact issue on the challenged elements of their claims. *Engel*, 350 S.W.3d at 607.

### a. Lack of Consideration

Lack of consideration is an affirmative defense. *See* Tex. R. Civ. P. 94. Chase alleged that this affirmative defense failed as a matter of law because Chase provided money to Apex and appellants, as evidenced by the transaction history. Chase asserted that it was induced to provide such consideration based on the guaranties executed by Nwokenkwo, the Adeniyis, and the Abakwues. Nwokenkwo and the Adeniyis responded that there was "no evidence that [they] received any value for the transactions between [Chase] and Apex."

Like any contract, a guaranty agreement must be supported by consideration. *Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 262 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Consideration "consists of either a benefit to the promisor or a detriment to the promisee." *Id.* "The detriment must induce the making of the promise, and the promise must induce the incurring of the detriment." *Roark*, 813 S.W.2d at 496. Consideration for a guaranty agreement is usually either the

11

sufferance of a detriment by the creditor or a benefit conferred on the primary debtor. *Ventura*, 102 S.W.3d at 262.

Determining whether a guaranty agreement is independent of the debt it guarantees, however, is not simply a question of the order in which the documents are signed. *First Com. Bank v. Palmer*, 226 S.W.3d 396, 398 (Tex. 2007). If the guarantor's promise is given as part of the transaction that creates the guaranteed debt, the consideration for the debt likewise supports the guaranty. *Universal Metals & Mach., Inc. v. Bohart*, 539 S.W.2d 874, 878 (Tex. 1976).

The question then is whether Nwokenkwo and the Adeniyis' guaranties were independent transactions so as to require consideration independent of the obligation to support the guaranty. A review of the record indicates that the guaranties executed by Nwokenkwo and the Adeniyis were not independent transactions because these guaranties were signed in connection with Notes 1, 2, and 3, as well as the renewal of Note 1. The language of each of the guaranties executed by appellants states that "[f]or good and value [sic] consideration . . . [Guarantor] absolutely and unconditionally guarantees and promises to pay [Chase] . . . the indebtedness of Apex." Under the terms of the guaranties executed by Nwokenkwo and the Adeniyis, the guaranties were "unlimited" and "continuing."

Construing the evidence in the light most favorable to Nwokenkwo and the Adeniyis, the record does not support their contention that they did not receive any consideration for the transactions between Chase and Apex. Accordingly, Nwokenkwo and the Adeniyis failed to present evidence raising a genuine issue of material fact on the challenged elements. *Gish*, 286 S.W.3d at 310.

### b. Impossibility

Impossibility is a defense to a cause of action for breach of contract. *Tractebel Energy Mktg., Inc. v. E.I. Du Pont De Nemours & Co.*, 118 S.W.3d 60, 66 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Texas law distinguishes between original impossibility and supervening impossibility. *Janak v. Fed. Deposit Ins. Corp.*, 586 S.W.2d 902, 906 (Tex. Civ. App.—Houston [1st Dist.] 1979, no writ).

Original impossibility exists when the contract was to do something that from the outset was impossible. *Id.* Whereas, supervening impossibility occurs when, "after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made." *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 775 (Tex. 2017) (citing Restatement (Second) of Contracts § 261 (1981)). Under this scenario, the party's "duty to render that performance is discharged, unless the language or the circumstances indicate the contrary." *Id.* (citing Restatement § 261).

Chase alleged that this affirmative defense failed as a matter of law because there was no event that was a "basic assumption" of the contract that caused Nwokenkwo or the Adeniyis' performance to become impracticable. In response, Nwokenkwo and the Adeniyis asserted that Nwakanma and the Abakwues "wrongfully and intentionally interfered with [their] ability to comply with Apex's obligations under the notes and [their] guarantees of the same." In support of their position, Nwokenkwo and the Adeniyis offered the following exhibits: an Apex board resolution, the affidavit of Adewumi Adeniyi, and the affidavit of Stanley C. Nwokenkwo. The board resolution, in its relevant parts, states:

> IT IS THEREFORE RESOLVED that Dr. Stanley C. Nwokenkwo, Mr. Adewumi Adeniyi and Mrs. Oluwatoyin Adeniyi are hereby withdrawn as Shareholders and directors of [Apex]. IT IS FURTHER RESOLVED that Apex . . . should admit new credit worthy partners to refinance the

13

existing loans with Chase bank and to release Dr. Nwokenkwo and Mr. & Mrs. Adeniyi's liabilities with Chase Bank with respect to their guarantorship of the existing loans. IT IS FURTHER RESOLVED that this action also constitutes a complete buyout of all their interests in [Apex] to which entitles Dr. Stanley Nwokenkwo, Adewumi Adeniyi and Oluwatoyin Adeniyi to no further remedies, payments, interests, or claims on Apex . . . or other remaining partners. IT IS FURTHER RESOLVED that Chase bank communicates with Dr. Nwokenkwo, Mr. & Mrs. Adeniyi directly on ways to remove these individuals from further liabilities relating to the pending loans which they guaranteed.

Nwokenkwo's and A. Adeniyi's affidavits both averred that Nwakanma and the Abakwues removed them from all accounts associated with Apex, the premises, and ownership of Apex. We note that the conclusory statements appellants make throughout their affidavits are not proper summary judgment evidence. "A conclusory statement is one that does not provide the underlying facts to support the conclusion. Conclusory statements in affidavits are not proper as summary judgment proof if there are no facts to support the conclusions." *Dolcefino v. Randolph*, 19 S.W.3d 906, 930 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (quoting *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no writ)).

The foregoing evidence, when viewed in the light most favorable to Nwokenkwo and the Adeniyis, at best, shows that their performance was more difficult, but not impossible. *See* Restatement § 261 cmt e (distinguishing between cases in which performance is excused because it is objectively impracticable ["the thing cannot be done"] and those in which it is not excused because it is merely subjectively impracticable ["I cannot do it"]). Because there is no evidence that Nwokenkwo and the Adeniyis' performance was made impossible by a supervening circumstance, we conclude that their frustration of purpose theory fails as a matter of law. *Mahrer v. Mahrer*, 510 S.W.2d 402, 405 (Tex. Civ. App.—Dallas 1974, no writ) (a contractual obligation cannot be avoided simply because the obligor's

14

performance has become more burdensome than he anticipated).

### c. Failure to Mitigate

The failure to mitigate damages is an affirmative defense. *Zimmerman Truck Lines, Inc. v. Pastran*, 587 S.W.3d 847, 862 (Tex. App.—El Paso 2019, no pet.). A party to a contract has a duty to mitigate damages if it can do so "at a trifling expense or with reasonable exertions." *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 426 (Tex. 1995). The party raising the defense must prove lack of diligence and the amount by which the failure to mitigate increased the amount of damages. *Kartsotis v. Bloch*, 503 S.W.3d 506, 522 (Tex. App.—Dallas 2016, pet. denied).

In responding to Chase's summary judgment, Nwokenkwo and the Adeniyis argued that Chase failed to mitigate its alleged damages arising from the deposit of the loan proceeds into Apex's account. Specifically, they claimed that they "warned [Chase] to stop depositing and issuing funds on numerous occasions" because Apex, the Abakwues, and Nwakanma were "diverting the loan payments for their own nefarious purposes." Appellants also avowed that Chase failed to mitigate its damages in the nonjudicial foreclosure sale of Apex's collateral because Chase failed to properly notice the sale and value of the items. In support of their position, they relied on the following exhibits: an Apex board resolution, the affidavit of Adewumi Adeniyi, the affidavit of Stanley C. Nwokenkwo, and the Notice of Disposition of Collateral.

As discussed above, Nwokenkwo and A. Adeniyi's affidavits are fraught with conclusory statements without any underlying factual details to support the conclusions. They failed to present any evidence that Nwakanma or the Abakwues were "diverting the loan payments for their own nefarious purposes." Likewise, they provided no evidence that Chase communicated with Nwakanma or the Adeniyis

15

regarding any misappropriated loan payments or that Chase was complicit in Nwokenkwo's and the Adeniyis' ouster from Apex.

Further, Nwokenkwo and the Adeniyis' claim that Chase failed to mitigate its damages in the nonjudicial foreclosure sale is undercut by the waiver provision in each of the guaranties they signed. The terms of the guaranties provide:

> This Guaranty is a guaranty of payment and not of collection. Therefore, the Lender can insist that the Guarantor pay immediately, and the Lender is not required to attempt to collect first from the Borrower, any collateral, or any other person liable for the indebtedness.

Notwithstanding Nwokenkwo and the Adeniyis' position, the notes and guaranties at issue clearly provide that Chase was not required to attempt to collect first from any borrower, any collateral, or any other person liable for the indebtedness before seeking payment from Nwokenkwo and the Adeniyis. Nwokenkwo and the Adeniyis have not presented any summary judgment evidence to raise a genuine fact issue on this affirmative defense. *See Engel*, 350 S.W.3d at 607; *see also Gish*, 286 S.W.3d at 310 (explaining that for a nonmovant to avoid summary judgment based on an affirmative defense, the nonmovant must raise a genuine issue of material fact on each element of the affirmative defense).

### d. Unconscionability

Unconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the contract, and (2) substantive unconscionability, which refers to the fairness of the contract itself. *See Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.* 564 S.W.3d 105, 131 (Tex. App.—El Paso 2018, no pet.). In assessing whether a contract generally is unconscionable under the totality of the circumstances, we consider: (1) the entire atmosphere in which the agreement was made; (2) the alternatives, if any, available

to the parties at the time the contract was made; (3) the non-bargaining ability of one party; (4) whether the contract was illegal or against public policy; and (5) whether the contract is oppressive or unreasonable. *Id.* The first three factors go toward the issue of procedural unconscionability; the last two factors go to the issue of substantive unconscionability. *Id.*

Nwokenkwo and the Adeniyis argued that the guaranties are unenforceable because their guaranties were "terminated" when Apex, Nwakanma, and the Abakwues assumed liability. Assuming that the guaranties executed by Nwokenkwo and the Adeniyis were assumed by Apex, Nwakanma, and the Abakwues, the record before us does not reflect that the guaranties executed by Nwokenkwo and the Adeniyis were revoked. The terms of the guaranties provide:

> If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will only apply to advances or new indebtedness created after actual receipt by Lender of Guarantor's written revocation and Lender's written acknowledgment of receipt.

Nwokenkwo and the Adeniyis have not produced more than a scintilla of evidence the circumstances surrounding the adoption of the guaranties were procedurally unconscionable or that the guaranties themselves are unfair. *Id.* Accordingly, we conclude that Nwokenkwo and the Adeniyis failed to meet their burden of producing more than a scintilla of evidence raising a genuine fact issue on this affirmative defense. *See Engel*, 350 S.W.3d at 607.

### e. Fraud

To constitute actionable fraud it must appear: (1) that a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive

17

assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury. *Custom Leasing Inc. v. Tex. Bank & Tr. Co. of Dallas*, 516 S.W.2d 138, 142–43 (Tex. 1974) (quoting *Wilson v. Jones*, 45 S.W.2d 572, 573 (Tex. Comm'n App. 1932)).

Nwokenkwo and the Adeniyis raised the affirmative defense of fraud. They argued that Apex, Nwakanma, and the Abakwues harassed and fraudulently induced them into executing the guaranties. Appellants, however, failed to present any summary judgment evidence that Chase's actions constituted actionable fraud, i.e. (1) Chase made a material misrepresentation, (2) Chase made a false statement, (3) Chase knew the misrepresentation was false or made recklessly without any knowledge of its truth, (4) Chase made the misrepresentation with the intention that Nwokenkwo and the Adeniyis would act, (5) in reliance on Chase's misrepresentations, Nwokenkwo and the Adeniyis acted, or (6) because of Chase's misrepresentations, Nwokenkwo and the Adeniyis suffered injury. Accordingly, Nwokenkwo and the Adeniyis have not presented any summary judgment evidence to raise a genuine fact issue on this affirmative defense.

Because Nwokenkwo and the Adeniyis failed to produce more than a scintilla of evidence raising a genuine issue of material fact on the challenged elements, the trial court did not err in granting Chase's no-evidence summary judgment. *Gish*, 286 S.W.3d at 310. Having concluded that there is no evidence raising a fact issue regarding any of the affirmative defenses raised by Nwokenkwo and the Adeniyis, we next examine Chase's entitlement to traditional summary judgment.

## B. Traditional Summary Judgment

Nwokenkwo and the Adeniyis argue on appeal that the trial court erred in granting Chase's traditional motion for summary judgment because Chase's motion

"wholly fail[ed] to articulate the elements of any cause of action actually pled and brought" by Chase against appellants." Nwokenkwo and the Adeniyis chief complaint is that Chase's motion for summary judgment is labeled "suit on guaranty" but "lists and argues the elements of a breach of contract cause of action." Chase maintains that its motion for summary judgment necessarily established each required element to prove its claims against Nwokenkwo and the Adeniyis. For the reasons set forth below, we agree. *See Comerica Bank v. Progressive Trade Enters., Inc.*, 544 S.W.3d 459, 465 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *see also Leach v. Triple-S Tube Supply, LP*, No. 01-19-00773-CV, 2021 WL 2931348, at *4 (Tex. App.—Houston [1st Dist.] July 13, 2021, no pet.).

Contrary to Nwokenkwo and the Adeniyis' position, we note that the guaranty at issue here is a type of contract. *See Leach*, 2021 WL 2931348, at *4. A breach of contract claim requires proof of (1) the existence of a valid contract, (2) the plaintiff's performance or tender of performance, as the contract required, (3) the defendant's breach by failure to perform, and (4) damages sustained by the plaintiff as a result of the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n. 21 (Tex. 2018); *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex. App.—Houston [14th Dist.] 2000, no pet.). A breach occurs when a party fails or refuses to do something he has promised to do. *See Townewest Homeowners Ass'n v. Warner Comm'n Inc.*, 826 S.W.2d 638, 640 (Tex. App.—Houston [14th Dist.] 1992, no writ).

In the context of a breach of guaranty, a party must show proof of (1) the existence and ownership of a guaranty contract, (2) the terms of the underlying contract by the holder, (3) the occurrence of the conditions upon which liability is based, and (4) the failure or refusal to perform by the guarantor. *Wasserberg v. Flooring Servs. of Tex., LLC*, 376 S.W.3d 202, 205 (Tex. App.—Houston [14th

19

Dist.] 2012, no pet.).

On the record before us, Chase's petition and motion for summary judgment is clear that it sought recovery from Nwokenkwo and the Adeniyis for breach of the guaranties. Further, the arguments and evidence presented by Chase conclusively established each element of its claim of breach under both the general breach of contract elements and the elements relating specifically to breach of a guaranty. *See Leach*, 2021 WL 2931348, at *4 (rejecting the argument that the trial court erred because Triple-S asserted the elements for breach of contract only).

Chase established the existence of a valid contract, i.e., Notes 1, 2, and 3. Each note was accompanied by personal guaranties executed by Nwokenkwo and the Adeniyis promising to pay Chase for Apex's indebtedness. *See Menchaca*, 545 S.W.3d at 501 (stating the first element of a breach of contract claim is existence of a valid contract); *Wasserberg*, 376 S.W.3d at 205 (stating that the first element of a breach of guaranty is the existence and ownership of a guaranty contract).

Moreover, Notes 1, 2, and 3, as well as the Commercial Guaranties executed by Nwokenkwo and the Adeniyis established the "terms of the underlying contract by the holder" and set out the conditions for performance. *See Wasserberg*, 376 S.W.3d at 205 (stating that the second element of a breach of guaranty is the terms of the underlying contract by the holder).

As discussed above, to secure Note 1, Nwokenkwo, the Adeniyis, and the Abakwues each executed a Commercial Guaranty under which they agreed that:

> The amount of this Guaranty is Unlimited. . . . For good and valuable consideration, [Guarantor] absolutely and unconditionally guarantees and promises to pay to JPMorgan Chase Bank, N.A. ("Lender") . . . the indebtedness . . . of Apex Dialysis and Pharmacy, LLC ("Borrower") to Lender on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations

20

of Guarantor are continuing. . . . Each of the following shall constitute an event of default ("Event of Default") under this Note: Borrower fails to make any payment when due under this Note.

To secure Note 2, Nwokenkwo and the Adeniyis executed a Commercial Guaranty under which each agreed that:

> To induce JPMorgan Chase Bank, N.A. . . . to make financial accommodations, make or acquire loans, extend or continue credit or some other benefit . . . to Apex Dialysis and Pharmacy, LLC . . . [Guarantor] has determined that executing this Guaranty is in its interest and to its financial benefit, the Guarantor absolutely and unconditionally guarantees to the Bank the performance of and full and prompt payment of the Liabilities when due, whether at stated maturity, by acceleration or otherwise, provided however, that the Liabilities shall not include any Excluded Swap Obligations. . . . The Guarantor will not only pay the Liabilities, but will also reimburse the Bank for any fees, charges, costs and expenses, including reasonable attorneys' fees (including fees and expenses of counsel for the Bank that are employees of the Bank or its affiliates) and court costs, that the Bank may pay in collecting from the Borrower or the Guarantor, and for liquidating any Collateral . . . both before and after judgment.

To secure Note 3, Nwokenkwo and the Adeniyis executed a Commercial Guaranty under which each agreed that:

> Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

Schottler's affidavit and the copies of the transaction history for Notes 1, 2, and 3 demonstrate that Chase performed as the contract required and that Apex, Nwokenkwo, and the Adeniyis failed to perform. *See Menchaca*, 545 S.W.3d at 501 (stating the second and third elements of a breach of contract claim are the plaintiff's performance or tender of performance and the defendant's breach by failure to

21

perform); *Wasserberg*, 376 S.W.3d at 205 (stating that the third element of a breach of guaranty is the occurrence of the conditions upon which liability is based). And Schottler's affidavit and the accompanying records established that Chase suffered damages of $1,850,570.59 on Note 1, $228,689.89 on Note 2, and $625,521.52 on Note 3 for the principal balance owed, plus interest, late fees, attorney's fees, and costs because of Apex's breach and Nwokenkwo and the Adeniyis' failure to fulfill their obligations under the guaranties. *See Menchaca*, 545 S.W.3d at 501 (stating the fourth element of a breach of contract claim is damages sustained by the plaintiff as a result of the breach); *Wasserberg*, 376 S.W.3d at 205 (stating that the fourth element of a breach of guaranty is the failure or refusal to perform by the guarantor).

Because Chase conclusively established each element of its breach of contract claims, the burden then shifted to Nwokenkwo and the Adeniyis to raise a genuine issue of material fact precluding summary judgment. *See Lujan*, 555 S.W.3d at 84. This shifting burden includes the obligation for Nwokenkwo and the Adeniyis to raise a genuine issue of material fact on each element of any affirmative defense that might have prevented the trial court from rendering judgment on Chase's claims. *See Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998); *see also Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984). As discussed above, Nwokenkwo and the Adeniyis failed to present any summary judgment evidence raising a fact issue on any affirmative defense that would have precluded summary judgment.

Accordingly, we overrule Nwokenkwo and the Adeniyis' first issue and turn to their remaining issue on appeal.

## II.    Severance was Proper

In their second issue, Nwokenkwo and the Adeniyis argue that the trial court

22

abused its discretion in ordering a severance. Specifically, Nwokenkwo and the Adeniyis contend that Chase is "critical" in presenting their claims in their third-party action against Nwakanma and the Abakwues because the claims are so "patently interwoven." We disagree.

Chase's action against Apex, Nwokenkwo, the Adeniyis, and the Abakwues was based on breaches of contracts and guaranties arising out of a loan transaction. Nwokenkwo and the Adeniyis did not file a counterclaim against Chase. Rather, Nwokenkwo and the Adeniyis initiated a third-party action against Apex, Nwakanma, and the Abakwues asserting that Nwakanma and the Abakwues fraudulently attempted to deprive appellants of their membership interest in Apex. After the trial court granted summary judgment in Chase's favor, Chase's action on its breach claims was severed from appellants' third-party action.

Rule 41 of the Texas Rules of Civil Procedure provides that "[a]ny claim against a party may be severed and proceeded with separately." We will not reverse a trial court's order severing a claim unless the trial court abused its discretion. *See Guar. Fed. Sav. Bank v. Horseshoe Op. Co.*, 793 S.W.2d 652, 658 (Tex. 1990). A claim is properly severable if (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues. *Id.* The controlling reasons for a severance are to avoid prejudice, do justice, and increase convenience. *See id.*

Here, the "controversy" involved more than one cause of action: Chase's actions for breach of contract and guaranty and Nwokenkwo and the Adeniyis' third-party action against Apex, Nwakanma, and the Abakwues for breach of contract,

23

breach of fiduciary duty, and fraud. The severed claim, Chase's action for breach of contract and guaranty, is the proper subject of an independently asserted lawsuit. Further, Chase's action for breach of contract and guaranty is not so interwoven with Nwokenkwo and the Adeniyis' third-party action that they involve the same facts and issues. Chase's action concerns a breach of the underlying contracts, and Nwokenkwo and the Adeniyis' action concerns a fraudulent attempt by Nwakanma and the Abakwues to deprive Nwokenkwo and the Adeniyis of their membership interest in Apex. Therefore, we hold that the trial court did not abuse its discretion in severing Chase's action from Nwokenkwo and the Adeniyis' third-party action.

Accordingly, we overrule Nwokenkwo and the Adeniyis' second issue.

### *Conclusion*

We affirm the judgment of the trial court.


/s/     Frances Bourliot
        Justice


Panel consists of Justices Jewell, Bourliot, and Hassan.